

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1540-06 & 1541-06

**RAYMOND EARL VINSON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, JOHNSON, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., joined. MEYERS, J., did not participate.

### O P I N I O N

In this case we address the issue of whether statements made by an unavailable witness to a police officer may be properly admitted through the police officer's testimony at trial, in light of the Confrontation Clause of the Sixth Amendment. This determination is dependent on whether the statements are testimonial or nontestimonial, as defined by the

United States Supreme Court in *Davis v. Washington*.[1]

## THE FACTS AND PROCEDURAL POSTURE

On December 6, 2004, Harris County Deputy Sheriff Stephen Chapman responded to a report by a 9-1-1 dispatch operator of a possible emergency at the apartment belonging to Lalania Hollimon and the appellant. The 9-1-1 operator told Chapman that a hang-up call had been made and that when the operator returned the interrupted call, a male answered and responded that there was no emergency. However, the operator heard a disturbance in the background and somebody yelling for police assistance. When Chapman arrived at the scene, Hollimon answered the door and appeared to be bleeding and in pain from recently inflicted injuries. Chapman asked her what had happened and Hollimon responded that her boyfriend had assaulted her. These statements constitute the first portion of Hollimon's statements. As the appellant does not contest the admissibility of these statements, we need not further address them in this opinion.[2]

Hollimon then identified her assailant as "Vinson," the appellant, and recounted the details of the assault, claiming that her assailant had knocked the phone out of her hand when she called 9-1-1. These statements constitute the second portion of Hollimon's statements.

---

[1] 126 S.Ct. 2266 (2006).

[2] The appellant did contest the admissibility of these statements before the court of appeals, but that court held that the statements were nontestimonial and the appellant does not presently challenge that conclusion in his petition for discretionary review.

It is these statements that the appellant presently asserts were testimonial for Confrontation Clause purposes. During the questioning, the appellant came into the room and demanded that Hollimon "tell [the deputy] the truth" and "don't let them take me to jail." Chapman noted that the appellant was "very excited," shirtless, and sweating profusely. Chapman secured the appellant by placing him in the back of his patrol car, and then resumed questioning Hollimon.

The appellant was charged by information with assault of a household member and interference with an emergency phone call. At trial, Chapman recounted the statements made to him by Hollimon, since Hollimon was unavailable as a witness.[3] The appellant objected to the portion of Chapman's testimony that related Hollimon's identification of the man in the room as "Vinson," as well as her detailed description of the assault and interference with an emergency call, on the basis that all of this testimony violated the Confrontation Clause and *Crawford v. Washington*.[4] The trial court overruled the appellant's objection, but allowed the appellant a running objection to Chapman's testimony. The appellant was ultimately convicted of both offenses. Punishment was assessed for each offense at confinement in jail for 365 days and a fine of $500, with the jail time to run concurrently.

On appeal to the First Court of Appeals, the appellant asserted, *inter alia*, that the trial

[3] The record is unclear exactly why Hollimon was unavailable. However, this detail is unimportant to the issue before us.

[4] 541 U.S. 36 (2004).

court had erred in allowing Hollimon's statements into evidence through Chapman's testimony because doing so violated the Confrontation Clause of the Sixth Amendment. The court of appeals found that, consistent with the holdings in *Crawford* and *Davis*, these statements were nontestimonial and therefore properly admitted.[5] Consequently, the court of appeals affirmed the judgment of the trial court.[6] We granted the appellant's petition for discretionary review to address the question of whether the court of appeals properly applied the holdings of *Crawford* and *Davis*, since this issue is likely to recur in future cases.[7]

## ANALYSIS

The Confrontation Clause of the Sixth Amendment guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him."[8] In his sole ground for review, the appellant argues that the court of appeals erred in finding that the trial court properly overruled the appellant's Confrontation Clause objection to the admission of statements made by Hollimon to Chapman. In 2004, the Supreme Court held that the Confrontation Clause "would not have allowed admission of *testimonial*

---

[5] *See Crawford v. Washington*, *supra* (holding that admission of testimonial statements recounted by a third party violate the Confrontation Clause unless the defendant had a prior opportunity to cross-examine the declarant); *Davis v. Washington*, *supra* (clarifying which statements are testimonial and which statements are nontestimonial).

[6] *Vinson v. State*, 221 S.W.3d 256, 267 (Tex. App.–Houston [1ˢᵗ Dist.] 2006).

[7] Tex. R. App. P. 66.3 (b).

[8] U.S. Const. amend. VI.

*statements* of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross examination."[9]  In the instant case, the appellant did not have a prior opportunity to cross-examine Hollimon.  Therefore, the admissibility of these statements through Chapman's testimony hinges on the determination of whether the statements are testimonial or nontestimonial.

Recently, in *Davis v. Washington*, the Supreme Court clarified the distinction between testimonial and nontestimonial statements, holding that:

> Without attempting to produce an exhaustive classification of all conceivable statements–or even all conceivable statements in response to police interrogation–as either testimonial or nontestimonial, it suffices to decide the present cases to hold as follows: Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.[10]

Thus, the issue in this case becomes whether, at the time that Hollimon made the statements to Chapman, circumstances were present that would objectively indicate the existence of an ongoing emergency.  The *Davis* court noted a non-exhaustive list of factors to consider when determining whether statements were made during on ongoing emergency: 1) whether the situation was still in progress; 2) whether the questions sought to determine what is presently

---

[9]

*Crawford v. Washington*, *supra*, at 53-54 (emphasis added).

[10]

*Davis v. Washington*, *supra*, at 2273-74.

happening as opposed to what has happened in the past; 3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; 4) whether the questioning was conducted in a separate room, away from the alleged attacker; and 5) whether the events were deliberately recounted in a step-by-step fashion.[11] We are concerned with the court of appeals's conclusion regarding the fourth factor.

Citing our decision in *Wall v. State*,[12] the court of appeals stated that it would rely on the trial court's implicit determination of historical fact that the appellant was present during the entire time that Chapman questioned Hollimon. It said, "[g]iven the trial court's legal ruling and the fact that appellant's continued presence during Hollimon's remaining statements would have supported that ruling . . . the trial court implicitly . . . determined that the appellant was present."[13] In arriving at this conclusion, the court of appeals reasoned that Chapman's recollection of events followed a particular chronological order that would support this interpretation, and that at several points during his testimony, Chapman seemed to imply that Hollimon's statements were made before the appellant had been secured. After reviewing the testimony of Chapman, we agree that *some* of what Hollimon told Chapman clearly occurred while the appellant was present, *viz*: the fact that "Vinson" assaulted her,

---

[11]
*Davis v. Washington*, *supra*, at 2278.

[12]
184 S.W.3d 730 (Tex. Crim. App. 2006).

[13]
*Vinson v. State*, *supra*, at 265-66.

and that the appellant is "Vinson." However, the record makes equally clear that the appellant was not present while Hollimon recounted the details of the assault to Chapman.

### Identification of the Appellant

The appellant first claims that Hollimon's identification of him as "Vinson" was testimonial in nature and thus violated the Confrontation Clause when Chapman testified to this statement. We disagree. During his direct examination, Chapman stated:

> [A] black male came from the living room area, and was saying "Tell him the truth. Tell him the truth." And, he – this male came out and he was – was – he had no shirt on. And, he was sweating profusely. At that point, I asked her who he was? [sic] She described him as her boyfriend . . . . And, told me that his name was "Vinson."

Then, on re-direct examination, Chapman reiterated this statement:

> [State]:     But, initially, when – when he told – when [Hollimon] told you that [the appellant] was the one who had assaulted her, was [the appellant] there?
>
> [Chapman]:   Yes.

These two excerpts from Chapman's testimony unequivocally show that the appellant was present when Hollimon identified him as "Vincent," and asserted that he was the one who had assaulted her. We agree with the court of appeals that up to this point, before the appellant had been secured in the patrol car, the trial court could rationally have concluded that any interrogation was nontestimonial. The trial court could reasonably have found that Chapman was still assessing the situation and that, until the appellant was secured, an

emergency situation was ongoing. We need not proceed any further with this analysis since this aspect of the trial court's ruling is plainly supported by the record. The court of appeals did not err to uphold the trial court's ruling in this respect.

**Detailed Description of the Assault**

The appellant next claims that Hollimon's detailed description of the assault was testimonial in nature and thus Chapman's conveyance of the details to the jury violates the Confrontation Clause. We must agree with the appellant. In our criminal justice system, the proponent of evidence ordinarily has the burden of establishing the admissibility of the proffered evidence.[14] If no objection is made, the evidence is generally deemed admissible. However, once an objection is made, the proponent must demonstrate that the proffered evidence overcomes the stated objection.[15] This rule applies in the instant case. Once the

---

[14] Preliminary questions of the admissibility of evidence are for the trial court to determine. *See* Tex. R. Evid. 104(a). Although the rule itself is silent with respect to the standard of proof, like the Supreme Court, "[w]e have traditionally required that these matters be established by a preponderance of proof." *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987)(because Fed. R. Evid. 104(a) is silent on the standard of proof the Court must observe in resolving these questions, the Court resorts to past case law which requires the proponent of the evidence establish preliminary factual questions by a preponderance of proof); *Alvarado v. State*, 912 S.W.2d 199, 215 (Tex. Crim. App. 1995) (*citing* Rule 104(a) in stating that "The State, as the proponent of the evidence, had the burden of proving to the trial court, by a preponderance of the evidence, that . . . testimony qualified as an adoptive admission under Rule 801(e)(2)(b)").

[15] *See Idaho v. Wright*, 497 U.S. 805, 816 (1990) ("the crux of the question presented is therefore whether the State, as the proponent of evidence presumptively barred by the hearsay rule and the Confrontation Clause, has carried its burden of proving that the . . . statements . . . bore sufficient indicia of reliability to withstand scrutiny under the Clause"). *Cf. Bourjaily v. United States*, *supra*, at 176 ("we hold that when the preliminary facts relevant to Rule 801(d)(2)(E) [of the Federal Rules of Evidence] are disputed, the offering party must prove them by a preponderance of the evidence."); Cofield *v. State*, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994) (in context of Rule

appellant was granted a running *Crawford* objection to Chapman's testimony, it was incumbent on the State to demonstrate the admissibility of that testimony.

It is clear from the record that when Chapman arrived at the scene, Holliman told Chapman that her boyfriend, "Vinson," who came into the room as they spoke, had assaulted her. This much, as we have already held, was nontestimonial. However, the following exchange occurred during Chapman's direct examination with respect to what Holliman told him after that initial, bare-fact statement:

> A     . . . And, I began to question her about the assault. And, during the questioning – you know – a black male came from the living room area, and was saying, "Tell him the truth. Tell him the truth." And, he – this male came out and he was – was – he had no shirt on . . . .

Chapman then related the details of the assault as Hollimon described them to him. Once he had related the details, the following colloquy ensued:

> Q     Now, after you spoke with Ms. Hollimon, what did you – what did you do?
>
> A     Well, at the time, after she identified Mr. Vinson as being her attacker – and,

---

803(24) of the Texas Rules of Criminal Evidence, since the "appellant preserved error by raising an objection, the burden then became the State's to show that the evidence was admissible pursuant to some exception . . ."); *Meador v. State*, 812 S.W.2d 330, 333 (Tex. Crim. App. 1991) ("the proponent of the statement has the burden of showing . . . that the statement does in fact meet the requirements of Rule 801(e)(2)(E)" of the Texas Rules of Criminal Evidence); *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991) (on rehearing on Court's own motion) (once an objection is made concerning extraneous offenses, the proponent of the evidence must satisfy the trial court that the evidence "has relevance besides its tendency 'to prove character of a person in order to show that he acted in conformity therewith'"); *Garcia v. State*, 792 S.W.2d 88, 95 (Tex. Crim. App. 1990) (requiring the State to "lay the proper predicate" for the admissibility of evidence under Art. 38.072 of the Texas Code of Criminal Procedure which deals with hearsay statements of child abuse victims); *and Long v. State*, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990) (placing the burden on the prosecutor "as proponent of the evidence . . . to satisfy each element of his predicate for admission of the mother's testimony pursuant to Art. 38.072").

his – and, because of his agitated state at the moment – I secured Mr. Vinson. And, I escorted him to my patrol car. I called for another unit to check by with me.

Q    Okay.

A    And, I placed him in the back seat of my patrol car. Pending any further investigation on what happened regarding the – the alleged assault.

Q    And, what other step – the pending investigation – what other steps in the investigation did you take?

A    I – I – I done further interview with the – with the Complainant.

Q    And, did that reaffirm what had happened?

A    Yes, it did.

Although these passages indicate that the appellant was indeed taken to the patrol car at some point during Chapman's interview with Hollimon, it is difficult to determine exactly when. But on re-direct examination of Chapman, the State clarified the chronology:

Q    Was the defendant there when Ms. Hollimon was – was telling you what happened?

A    (No response)

Q    Was he in the same room? The same area? Where was he?

A    When I interviewed her in detail about — regarding what happened — I had taken the Defendant from the residence and placed him in my patrol car.

This passage clearly shows that Chapman had removed the appellant prior to interviewing Hollimon about the details of the assault. Because the appellant was not present during the recounting of the assault, and no other *Davis* factors indicate that an emergency situation was

still in progress, Hollimon's statements to Chapman concerning the details of the assault were testimonial in nature and thus inadmissible under *Crawford*.

As noted in *Wall v. State*, a reviewing court should typically defer to a trial court's determination of historical facts.[16] If, for example, a witness makes conflicting statements, we generally defer to the trial court as to which statement is more credible. Likewise, we do the same when two witnesses give conflicting testimony, or any time ambiguous evidence may reasonably give rise to conflicting inferences. But when the trial court's ruling cannot possibly be derived from the historical facts, we must keenly review the issue. Here, the trial court's finding, that statements Hollimon made were non-testimonial, simply cannot be deduced from Chapman's testimony. The fact is, Chapman's statement on re-direct examination clearly indicates that the appellant was not present when Hollimon recounted the details of the assault. With the appellant securely removed from the area, the situation turned into a non-emergency setting in which Chapman was simply interviewing Hollimon concerning the alleged assault.[17]

---

[16] 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

[17] The record is clear that the appellant entered the room in which Chapman and Hollimon were located at some point during the questioning. Hollimon's injuries included swollen lips, abrasions, a severe laceration on her lower lip, and both fresh and dried blood on her face and on the towel she was holding. Meanwhile, the appellant was apparently shirtless, sweating profusely, and demanding that Hollimon not let the police take him to jail. Chapman, as the only officer yet at the scene, had to deal with an injured woman and a physically agitated man. Thus, we do not question the fact that the trial court *could* rationally have determined that there was an ongoing emergency

**CONCLUSION**

We hold that Hollimon's initial identification of her assailant as the appellant, "Vinson," was not testimonial in nature, and thus did not violate the Confrontation Clause of the Sixth Amendment. However, Hollimon's statements to Chapman concerning the details of the assault were improperly admitted by the trial court because the State failed to establish that the statements were nontestimonial. Therefore, the admission of those details into evidence through the vehicle of Chapman's testimony violated the Confrontation Clause. The judgment of the court of appeals is affirmed in part and reversed in part, and the cause is remanded to that court for a harm analysis.

Delivered:    January 16, 2008
Publish

---

situation when Chapman first arrived on the scene. But once the appellant was removed, Hollimon's injuries were not so threatening that the emergency situation persisted even in the appellant's absence.