Raymond Earl VINSON, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–05–00784–CR, 01–05–00785–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 21, 2008.

Dionne Susan Press, Houston, TX, for Appellant.

Alan Curry, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices TAFT and HUDSON.[2]

## OPINION ON REMAND FROM THE TEXAS COURT OF CRIMINAL APPEALS

TIM TAFT, Justice.

A jury convicted appellant, Raymond Earl Vinson, of assault on a family member and of interference with an emergency telephone call. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), (b)(2), 42.062(a) (Vernon 2003). The trial court assessed punishment at 365 days' confinement in the Harris County Jail and a $500 fine for both cases, with jail time to run concurrently. In the original appeal, we affirmed. *Vinson v. State*, 221 S.W.3d 256 (Tex.App.–Houston [1st Dist.] 2006), *rev'd*, 252 S.W.3d 336 (Tex.Crim.App.2008).

The Court of Criminal Appeals granted appellant's petition for discretionary review on the issue of whether statements made by an unavailable witness to a police officer were properly admitted through the police officer's testimony at trial, in light of

**2.** The Honorable J. Harvey Hudson, retired justice, Fourteenth Court of Appeals, Houston, Texas, participating by assignment.

the Confrontation Clause of the Sixth Amendment of the United States Constitution. *See* U.S. CONST. amend. VI. Holding that some of the statements were improperly admitted, the Court of Criminal Appeals reversed our judgments and remanded the causes for a harm analysis related to that issue.[1] *Vinson v. State*, 252 S.W.3d 336, 342 (Tex.Crim.App.2008).

## Facts

On December 6, 2004, Harris County Deputy Sheriff Stephen Chapman responded to a report by a 9–1–1 dispatch operator of a possible emergency at the apartment of Lalania Hollimon, the complainant. When Deputy Chapman arrived, Hollimon answered the door and appeared to be bleeding and in pain from recently inflicted injuries. She told Deputy Chapman that her boyfriend had assaulted her. She identified her assailant as appellant and recounted details of the assault. At trial, Hollimon was unavailable as a witness. During his testimony, Deputy Chapman recounted the statements that Hollimon had made to him. The trial court allowed appellant a running objection to the portion of Deputy Chapman's testimony that related Hollimon's identification of appellant and her detailed description of the assault on the basis that it violated the Confrontation Clause of the United States Constitution and *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (holding that out-of-court statements by witnesses that are testimonial are barred under the Confrontation Clause).

In our previous opinion, we held that all of Hollimon's statements were nontestimonial in nature because we deemed the trial court implicitly to have concluded that ap- pellant was present in the room during Deputy Chapman's questioning of Hollimon. *Vinson*, 221 S.W.3d at 265–67. The Court of Criminal Appeals determined that appellant was not present during the second half of Hollimon's questioning. *Vinson*, 252 S.W.3d at 341. The Court of Criminal Appeals held that the statements that Hollimon made to Deputy Chapman while appellant was not present were testimonial in nature and that the admission of those statements through Deputy Chapman's testimony violated appellant's constitutional right to confront his accuser. *See id.* at 342.

## Harm Analysis

When constitutional error has been found and harmless-error analysis is required, we must reverse the judgment of the trial court unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* TEX.R.APP. P. 44.2(a). In other words, here, we must determine whether, after examining the record as a whole, there is a reasonable possibility that the evidence of which complaint is made might have contributed to appellant's conviction or punishment. *See Denton v. State*, 920 S.W.2d 311, 312 (Tex.Crim.App.1996).

■ In determining whether constitutional error under *Crawford* may be declared harmless beyond a reasonable doubt, we must consider the following factors, as determined by the Court of Criminal Appeals: (1) how important the statement was to the State's case; (2) whether the out-of-court statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the statement on material

---

**1.** The Court of Criminal Appeals's opinion recites that our judgments are "affirmed in part and reversed in part," but the mandates reverse our judgments, which is the proper disposition based on the court's holdings.

points; and (4) the overall strength of the State's case. *Scott v. State*, 227 S.W.3d 670, 690 (Tex.Crim.App.2007); *see Davis v. State*, 203 S.W.3d 845, 852 (Tex.Crim.App. 2006). We also must presume that the damaging potential of any cross-examination would have been fully realized had the witness been present to testify. *Baldree v. State*, 248 S.W.3d 224, 231 (Tex.App.– Houston [1st Dist.] 2007, pet. ref'd); *Miller v. State*, 177 S.W.3d 1, 8 (Tex.App.– Houston [1st Dist.] 2004, no pet.).

 The emphasis of a harm analysis pursuant to Texas Rule of Appellate Procedure 44.2(a) should not be on "the propriety of the outcome of the trial." *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim. App.1989). Rather, we must determine if the error adversely affected "the integrity of the process leading to the conviction." *Id.* "The question is not whether the jury verdict was supported by the evidence[;] the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at a verdict." *Wells v. State*, 241 S.W.3d 172, 177 (Tex.App.–Eastland 2007, pet. ref'd). We may also consider the source and nature of the error, the amount of emphasis by the State on the erroneously admitted testimony, and the weight that a juror would probably give that testimony. *Scott*, 227 S.W.3d at 690.

 Accordingly, we must determine whether there is a "reasonable possibility that the *Crawford* error ... 'moved the jury from a state of non-persuasion to one of persuasion on a particular issue.'" *Davis*, 203 S.W.3d at 853 (quoting *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim.App.2000)). After considering these various factors, we must be satisfied—beyond a reasonable doubt—that the error did not contribute to the conviction, if we are to affirm. *See id.*; *see also* TEX.R.APP. P. 44.2(a).

## A. The Importance of the Erroneously Admitted Testimony to the State's Case

### 1. The State's Case Without the Erroneously Admitted Evidence

 At trial, the State waived opening statements, and Deputy Chapman's testimony was the first evidence that the jury heard. Deputy Chapman's testimony began with his first-person description of Hollimon and the state of the apartment. Deputy Chapman observed that Hollimon was visibly shaking, had swollen lips and abrasions, was holding a towel to her face, was bleeding, and was in obvious pain from injuries that appeared recent. Next, Deputy Chapman testified that Hollimon related to him that her boyfriend had assaulted her. He then began questioning her about the alleged assault, at which point appellant came into the room saying, "Tell him the truth." Deputy Chapman described appellant as shirtless, sweating profusely, and very excited. Hollimon then identified appellant as her boyfriend to Deputy Chapman. The Court of Criminal Appeals held that Deputy Chapman's testimony, up to this point, was nontestimonial in nature and, thus, admissible. *Vinson*, 252 S.W.3d at 339–40.

Aside from Deputy Chapman's testimony, the State also introduced into evidence a tape of the 9–1–1 telephone call that was made and photographs of the scene and of Hollimon's injuries. The 9–1–1 tape showed that a call was placed from Hollimon's residence and was soon followed by an abrupt hang-up. The 9–1–1 dispatch operator called back to the residence and advised Deputy Chapman that a male had answered the telephone and said there was no problem, even though the operator could hear that there was a "disturbance in the background, with

somebody yelling that they [sic] need[ed] the police." The photographs of Hollimon's injuries depicted a deep laceration on her chin, an abrasion on the backside of her ear, and bruising. Other photographs showed bloodstains on the floor and kitchen area, a damaged glass-top coffee table, and two broken lamps. In the State's closing argument, the prosecutor repeatedly emphasized the details of the 9–1–1 call and the injuries found within the photographs. The prosecutor told the jury that the pictures were "worth a thousand words."

### 2. The Erroneously Admitted Evidence

Concluding that Deputy Chapman's testimony on redirect examination unequivocally clarified that he placed appellant in his patrol car after Hollimon had identified appellant as her assailant during his initial interrogation, the Court of Criminal Appeals held that Hollimon's statements made after she had identified appellant were testimonial in nature and, thus, inadmissible. *Vinson,* 252 S.W.3d at 341–42. These statements included Hollimon's description of the background to and the details of the alleged assault.

As for the erroneously admitted statements concerning background information, Deputy Chapman was allowed to recount information that appellant and Hollimon were living together, that the two were having problems in their relationship, that appellant was moving out of the apartment and became angry while packing, and that the two began to argue.

Hollimon's detailed description of the assault, as related by Deputy Chapman, included Hollimon's explanation that when appellant got angry, he began "punching her in the face"; that appellant "knocked [the phone] out of her hand" when she attempted to call 9–1–1; that she ran from the living room to the kitchen, at which

point appellant "came after her and began to remove his belt from his pants . . . to whip her with it"; and that appellant pulled an extension cord from the wall and "started swinging it at her."

### 3. The Importance of the Erroneously Admitted Evidence

The burden on the State was to bring forth enough evidence to prove to the jury, beyond a reasonable doubt, that appellant (1) interfered with Hollimon's 9–1–1 telephone call and (2) assaulted her. The specific language of the misdemeanor charge alleged:

[Defendant] did unlawfully knowingly interfere with the ability of [Hollimon] to request assistance in an emergency, regarding a domestic assault in progress, from a law enforcement agency . . . *by grabbing the phone from the Complainant's hand and disconnecting the phone.*

(emphasis added). The language of the felony assault charge alleged:

[Defendant] did unlawfully intentionally and knowingly cause bodily injury to [Hollimon], a member of Defendant's household and family, . . . *by striking the Complainant with his hand* . . . [and] *by striking the Complainant with an extension cord.*

(emphasis added). The trial court reiterated the elements of each charge in the instructions given to the jury at the end of the trial. Thus, the State's burden was clear: it was to bring forth enough evidence to show, beyond a reasonable doubt, the manner and means of each charged offense.

In this case, Hollimon's inadmissible statements were critical to the State's case. Statements made by Hollimon after appellant was placed into custody specifically dealt with the manner and means of each charged offense. Hollimon's statements detailed each and every physical act

allegedly committed by appellant, from his punching her in the face and pulling the telephone from her hands, to his swinging an extension cord at her. It was Hollimon's statements about the details of the offenses that provided the only evidence of the exact manner and means in which appellant committed the offenses alleged. Hollimon's testimony about the background and events leading up to the alleged assault—that she and appellant were arguing about their relationship—also assisted the State in showing the jury appellant's apparent motivation for assaulting Hollimon.

## B. Whether the Erroneously Admitted Evidence Was Cumulative

Hollimon's statements detailing the manner and means alleged were not cumulative of the other evidence at trial. Deputy Chapman's initial observation of the scene—that Hollimon was visibly shaking and in obvious pain from recent injuries—did not show manner or means. The injuries sustained by Hollimon, particularly the bruises on her face and the blood on the floor that resulted from appellant's assault, were also not sufficient to show manner and means. Even the contents of the 9–1–1 call did not reveal any specific details as to the manner and means alleged.

## C. The Presence or Absence of Corroboration or Contradiction

Evidence that corroborates some of the erroneously admitted statements is found in the photographs taken at the scene and the 9–1–1 telephone call. The photographs show bruising and lacerations consistent with Hollimon's statements that appellant punched her repeatedly while she was lying on the couch. Hollimon's description of what occurred when she attempted to dial 9–1–1 is corroborated by the tape of the telephone call, which shows she was interrupted when speaking to the emergency responder. Furthermore, Hollimon's allegations of what occurred at the scene were corroborated by Deputy Chapman's testimony, based on his training and experience. What lacks corroboration are the statements by Hollimon that indicate that appellant had knocked the phone from her hand and had swung an extension cord at her. Also lacking corroboration are Hollimon's statements about the background and the details leading up to the alleged assault. There was no evidence that contradicted Hollimon's statements, however.

## D. The Strength of the State's Case

### 1. The State's Case

The State's case consisted of the testimony of two witnesses, Deputy Chapman and the photographer, Harris County Deputy D. Willis, and nine exhibits: four photographs of Hollimon's injuries, four photographs of the scene, and one tape recording of the 9–1–1 call. The State used Deputy Chapman's testimony to show the response to the disturbance, the details of the initial scene, the condition of Hollimon and her assailant, and the specific details of the assault, as described by Hollimon. The State used Deputy Willis to corroborate Deputy Chapman's testimony, specifically inquiring as to a description of the injuries sustained by Hollimon. Deputy Chapman's testimony, without the erroneously admitted evidence, pertained to the initial scene, Hollimon's allegations, and her apparent injuries. Deputy Willis's testimony merely reechoed Deputy Chapman's description.

### 2. Appellant's Strategy

Upon cross-examination of Deputy Chapman, appellant inquired whether Deputy Chapman had conducted an investigation into the "v[e]racity of the person

reporting information to him" at the scene. Appellant asked if Deputy Chapman had made any inquiries into Hollimon's reputation for truthfulness, in an effort to undermine her credibility. Deputy Chapman responded that he had not conducted any sort of investigation, nor had he reviewed her criminal history report. Appellant also emphasized, through cross-examination, that Deputy Chapman's testimony about the details of the assault was based solely on what he had been told by Hollimon. Appellant's questioning of Deputy Willis revealed no new information, aside from the fact that Deputy Willis had not sufficiently inspected appellant for injuries.

From the record, we determine that appellant's main strategy was to show the jury (1) that Deputy Chapman's testimony about the details of the assault was based on second-hand knowledge from Hollimon and (2) that Hollimon was not credible. Appellant's strategy is even more apparent from the fact that appellant tried, albeit unsuccessfully, to call witnesses who would have corroborated the theory that Hollimon was not credible. These witnesses were not allowed to testify because the trial court agreed with the State that their testimony would be prejudicial and would violate hearsay rules. Although he was not permitted to question witnesses for facts relating to Hollimon's truthfulness, or to her reputation for theft and violence, appellant was permitted to offer evidence of Hollimon's past judgments and sentences, which contained two misdemeanor convictions for theft. Appellant also offered evidence of an indictment for a felony (possession of a controlled substance), but the trial court denied the offer.

### 3. The Overall Strength of the State's Case

Overall, the State's case was strong in showing that appellant assaulted Hollimon; however, the case lacked specific details as to the manner and means of the assault, but for Hollimon's erroneously admitted statements. Without Hollimon's erroneously admitted statements, the State also would not have been able to prove the manner and means of the offenses. The photographs provided evidence that Hollimon had suffered injuries, and the 9–1–1 tape showed that her call was interrupted, but neither the photographs nor the tape could offer details of how the charged offenses occurred.

### E. The Effect of Impeaching the Absent Witness

From the record, it is unclear what additional impeachment appellant would have been able to do beyond the two prior theft convictions that were before the jury.

### F. Resolution of the Harmless–Error Factors

Although some of the factors favor a finding of harmlessness, one factor outweighs all the others in our analysis: the State was able to prove the manner and means of the two offenses only through the erroneously admitted evidence.

Because the State's case, as far as showing the manner and means for the charged offenses, relied on the details of the events as found in Hollimon's erroneously admitted statements, we conclude that there is a reasonable possibility that such evidence impacted the convictions of appellant. Moreover, we further determine that there is a reasonable possibility that a juror would not have been able to conclude beyond a reasonable doubt that appellant "struck Hollimon with an extension cord," or that he "knocked the telephone from her hands," but for the erroneously admitted evidence. Therefore, after reviewing the record, we are unable to say, beyond a reasonable doubt, that Deputy Chapman's erroneously admitted testimony of Hollimon's statements did not contribute to ap-

72

pellant's convictions. Thus, we hold that the error was harmful, and we sustain appellant's sole point of error.

## Conclusion

We reverse the judgments of the trial court and remand the causes.