Opinion issued August 21, 2008
 











    
In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-05-00784-CR
NO. 01-05-00785-CR
____________

RAYMOND EARL VINSON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from County Criminal Court at Law Number 1
Harris County, Texas
Trial Court Cause Nos. 1289313 & 1273452



 
OPINION ON REMAND FROM 
THE TEXAS COURT OF CRIMINAL APPEALS

          A jury convicted appellant, Raymond Earl Vinson, of assault on a family
member and of interference with an emergency telephone call. See Tex. Penal Code
Ann. §§ 22.01(a)(1), (b)(2), 42.062(a) (Vernon 2003). The trial court assessed
punishment at 365 days’ confinement in the Harris County Jail and a $500 fine for
both cases, with jail time to run concurrently. In the original appeal, we affirmed. 
Vinson v. State, 221 S.W.3d 256 (Tex. App.—Houston [1st Dist.] 2006), rev’d, 252
S.W.3d 336 (Tex. Crim. App. 2008).
          The Court of Criminal Appeals granted appellant’s petition for discretionary
review on the issue of whether statements made by an unavailable witness to a police
officer were properly admitted through the police officer’s testimony at trial, in light
of the Confrontation Clause of the Sixth Amendment of the United States
Constitution. See U.S. Const. amend. VI. Holding that some of the statements were
improperly admitted, the Court of Criminal Appeals reversed our judgments and
remanded the causes for a harm analysis related to that issue.


 Vinson v. State, 252
S.W.3d 336, 342 (Tex. Crim. App. 2008).
Facts
          On December 6, 2004, Harris County Deputy Sheriff Stephen Chapman
responded to a report by a 9-1-1 dispatch operator of a possible emergency at the
apartment of Lalania Hollimon, the complainant. When Deputy Chapman arrived,
Hollimon answered the door and appeared to be bleeding and in pain from recently
inflicted injuries. She told Deputy Chapman that her boyfriend had assaulted her. 
She identified her assailant as appellant and recounted details of the assault. At trial,
Hollimon was unavailable as a witness. During his testimony, Deputy Chapman
recounted the statements that Hollimon had made to him. The trial court allowed
appellant a running objection to the portion of Deputy Chapman’s testimony that
related Hollimon’s identification of appellant and her detailed description of the
assault on the basis that it violated the Confrontation Clause of the United States
Constitution and Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004)
(holding that out-of-court statements by witnesses that are testimonial are barred
under the Confrontation Clause).
          In our previous opinion, we held that all of Hollimon’s statements were
nontestimonial in nature because we deemed the trial court implicitly to have
concluded that appellant was present in the room during Deputy Chapman’s
questioning of Hollimon. Vinson, 221 S.W.3d at 265–67. The Court of Criminal
Appeals determined that appellant was not present during the second half of
Hollimon’s questioning. Vinson, 252 S.W.3d at 341. The Court of Criminal Appeals
held that the statements that Hollimon made to Deputy Chapman while appellant was
not present were testimonial in nature and that the admission of those statements
through Deputy Chapman’s testimony violated appellant’s constitutional right to
confront his accuser. See id. at 342.
Harm Analysis
          When constitutional error has been found and harmless-error analysis is
required, we must reverse the judgment of the trial court unless we determine beyond
a reasonable doubt that the error did not contribute to the conviction or punishment. 
See Tex. R. App. P. 44.2(a). In other words, here, we must determine whether, after
examining the record as a whole, there is a reasonable possibility that the evidence
of which complaint is made might have contributed to appellant’s conviction or
punishment. See Denton v. State, 920 S.W.2d 311, 312 (Tex. Crim. App. 1996). 
          In determining whether constitutional error under Crawford may be declared
harmless beyond a reasonable doubt, we must consider the following factors, as
determined by the Court of Criminal Appeals: (1) how important the statement was
to the State’s case; (2) whether the out-of-court statement was cumulative of other
evidence; (3) the presence or absence of evidence corroborating or contradicting the
statement on material points; and (4) the overall strength of the State’s case. Scott v.
State, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007); see Davis v. State, 203 S.W.3d
845, 852 (Tex. Crim. App. 2006). We also must presume that the damaging potential
of any cross-examination would have been fully realized had the witness been present
to testify. Baldree v. State, 248 S.W.3d 224, 231 (Tex. App.—Houston [1st Dist.]
2007, pet. ref’d); Miller v. State, 177 S.W.3d 1, 8 (Tex. App.—Houston [1st Dist.]
2004, no pet.). 
          The emphasis of a harm analysis pursuant to Texas Rule of Appellate
Procedure 44.2(a) should not be on “the propriety of the outcome of the trial.” Harris
v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989). Rather, we must determine
if the error adversely affected “the integrity of the process leading to the conviction.” 
Id. “The question is not whether the jury verdict was supported by the evidence[;] the
question is the likelihood that the constitutional error was actually a contributing
factor in the jury’s deliberations in arriving at a verdict.” Wells v. State, 241 S.W.3d
172, 177 (Tex. App.—Eastland 2007, pet. ref’d). We may also consider the source
and nature of the error, the amount of emphasis by the State on the erroneously
admitted testimony, and the weight that a juror would probably give that testimony. 
Scott, 227 S.W.3d at 690.
          Accordingly, we must determine whether there is a “reasonable possibility that
the Crawford error . . . ‘moved the jury from a state of non-persuasion to one of
persuasion on a particular issue.’” Davis, 203 S.W.3d at 853 (quoting Westbrook v.
State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000)). After considering these various
factors, we must be satisfied—beyond a reasonable doubt—that the error did not
contribute to the conviction, if we are to affirm. See id.; see also Tex. R. App. P.
44.2(a). 
 
 
A.      The Importance of the Erroneously Admitted Testimony to the State’s
Case
 
          1.       The State’s Case Without the Erroneously Admitted Evidence
          At trial, the State waived opening statements, and Deputy Chapman’s
testimony was the first evidence that the jury heard. Deputy Chapman’s testimony
began with his first-person description of Hollimon and the state of the apartment. 
Deputy Chapman observed that Hollimon was visibly shaking, had swollen lips and
abrasions, was holding a towel to her face, was bleeding, and was in obvious pain
from injuries that appeared recent. Next, Deputy Chapman testified that Hollimon
related to him that her boyfriend had assaulted her. He then began questioning her
about the alleged assault, at which point appellant came into the room saying, “Tell
him the truth.” Deputy Chapman described appellant as shirtless, sweating profusely,
and very excited. Hollimon then identified appellant as her boyfriend to Deputy
Chapman. The Court of Criminal Appeals held that Deputy Chapman’s testimony,
up to this point, was nontestimonial in nature and, thus, admissible. Vinson, 252
S.W.3d at 339–40.
          Aside from Deputy Chapman’s testimony, the State also introduced into
evidence a tape of the 9-1-1 telephone call that was made and photographs of the
scene and of Hollimon’s injuries. The 9-1-1 tape showed that a call was placed from
Hollimon’s residence and was soon followed by an abrupt hang-up. The 9-1-1
dispatch operator called back to the residence and advised Deputy Chapman that a
male had answered the telephone and said there was no problem, even though the
operator could hear that there was a “disturbance in the background, with somebody
yelling that they [sic] need[ed] the police.” The photographs of Hollimon’s injuries
depicted a deep laceration on her chin, an abrasion on the backside of her ear, and
bruising. Other photographs showed bloodstains on the floor and kitchen area, a
damaged glass-top coffee table, and two broken lamps. In the State’s closing
argument, the prosecutor repeatedly emphasized the details of the 9-1-1 call and the
injuries found within the photographs. The prosecutor told the jury that the pictures
were “worth a thousand words.”
           2.       The Erroneously Admitted Evidence
          Concluding that Deputy Chapman’s testimony on redirect examination
unequivocally clarified that he placed appellant in his patrol car after Hollimon had
identified appellant as her assailant during his initial interrogation, the Court of
Criminal Appeals held that Hollimon’s statements made after she had identified
appellant were testimonial in nature and, thus, inadmissible. Vinson, 252 S.W.3d at
341–42. These statements included Hollimon’s description of the background to and
the details of the alleged assault. 
          As for the erroneously admitted statements concerning background
information, Deputy Chapman was allowed to recount information that appellant and
Hollimon were living together, that the two were having problems in their
relationship, that appellant was moving out of the apartment and became angry while
packing, and that the two began to argue. 
          Hollimon’s detailed description of the assault, as related by Deputy Chapman,
included Hollimon’s explanation that when appellant got angry, he began “punching
her in the face”; that appellant “knocked [the phone] out of her hand” when she
attempted to call 9-1-1; that she ran from the living room to the kitchen, at which
point appellant “came after her and began to remove his belt from his pants . . . to
whip her with it”; and that appellant pulled an extension cord from the wall and
“started swinging it at her.”
          3.       The Importance of the Erroneously Admitted Evidence
          The burden on the State was to bring forth enough evidence to prove to the
jury, beyond a reasonable doubt, that appellant (1) interfered with Hollimon’s 9-1-1
telephone call and (2) assaulted her. The specific language of the misdemeanor
charge alleged:
[Defendant] did unlawfully knowingly interfere with the ability of
[Hollimon] to request assistance in an emergency, regarding a domestic
assault in progress, from a law enforcement agency . . . by grabbing the
phone from the Complainant’s hand and disconnecting the phone.
  
(emphasis added). The language of the felony assault charge alleged:
[Defendant] did unlawfully intentionally and knowingly cause bodily
injury to [Hollimon], a member of Defendant’s household and family,
. . . by striking the Complainant with his hand . . . [and] by striking the
Complainant with an extension cord.
 
(emphasis added). The trial court reiterated the elements of each charge in the
instructions given to the jury at the end of the trial. Thus, the State’s burden was
clear: it was to bring forth enough evidence to show, beyond a reasonable doubt, the
manner and means of each charged offense.
          In this case, Hollimon’s inadmissible statements were critical to the State’s
case. Statements made by Hollimon after appellant was placed into custody
specifically dealt with the manner and means of each charged offense. Hollimon’s
statements detailed each and every physical act allegedly committed by appellant,
from his punching her in the face and pulling the telephone from her hands, to his
swinging an extension cord at her. It was Hollimon’s statements about the details of
the offenses that provided the only evidence of the exact manner and means in which
appellant committed the offenses alleged. Hollimon’s testimony about the
background and events leading up to the alleged assault—that she and appellant were
arguing about their relationship—also assisted the State in showing the jury
appellant’s apparent motivation for assaulting Hollimon.
B.      Whether the Erroneously Admitted Evidence Was Cumulative
          Hollimon’s statements detailing the manner and means alleged were not
cumulative of the other evidence at trial. Deputy Chapman’s initial observation of
the scene—that Hollimon was visibly shaking and in obvious pain from recent
injuries—did not show manner or means. The injuries sustained by Hollimon,
particularly the bruises on her face and the blood on the floor that resulted from
appellant’s assault, were also not sufficient to show manner and means. Even the
contents of the 9-1-1 call did not reveal any specific details as to the manner and
means alleged.
C.      The Presence or Absence of Corroboration or Contradiction
          Evidence that corroborates some of the erroneously admitted statements is
found in the photographs taken at the scene and the 9-1-1 telephone call. The
photographs show bruising and lacerations consistent with Hollimon’s statements that
appellant punched her repeatedly while she was lying on the couch. Hollimon’s
description of what occurred when she attempted to dial 9-1-1 is corroborated by the
tape of the telephone call, which shows she was interrupted when speaking to the
emergency responder. Furthermore, Hollimon’s allegations of what occurred at the
scene were corroborated by Deputy Chapman’s testimony, based on his training and
experience. What lacks corroboration are the statements by Hollimon that indicate
that appellant had knocked the phone from her hand and had swung an extension cord
at her. Also lacking corroboration are Hollimon’s statements about the background
and the details leading up to the alleged assault. There was no evidence that
contradicted Hollimon’s statements, however.
 
D.      The Strength of the State’s Case
          1.       The State’s Case 
          The State’s case consisted of the testimony of two witnesses, Deputy Chapman
and the photographer, Harris County Deputy D. Willis, and nine exhibits: four
photographs of Hollimon’s injuries, four photographs of the scene, and one tape
recording of the 9-1-1 call. The State used Deputy Chapman’s testimony to show the
response to the disturbance, the details of the initial scene, the condition of Hollimon
and her assailant, and the specific details of the assault, as described by Hollimon. 
The State used Deputy Willis to corroborate Deputy Chapman’s testimony,
specifically inquiring as to a description of the injuries sustained by Hollimon. 
Deputy Chapman’s testimony, without the erroneously admitted evidence, pertained
to the initial scene, Hollimon’s allegations, and her apparent injuries. Deputy Willis’s
testimony merely reechoed Deputy Chapman’s description. 
          2.       Appellant’s Strategy 
          Upon cross-examination of Deputy Chapman, appellant inquired whether
Deputy Chapman had conducted an investigation into the “v[e]racity of the person
reporting information to him” at the scene. Appellant asked if Deputy Chapman had
made any inquiries into Hollimon’s reputation for truthfulness, in an effort to
undermine her credibility. Deputy Chapman responded that he had not conducted any
sort of investigation, nor had he reviewed her criminal history report. Appellant also
emphasized, through cross-examination, that Deputy Chapman’s testimony about the
details of the assault was based solely on what he had been told by Hollimon. 
Appellant’s questioning of Deputy Willis revealed no new information, aside from
the fact that Deputy Willis had not sufficiently inspected appellant for injuries.
          From the record, we determine that appellant’s main strategy was to show the
jury (1) that Deputy Chapman’s testimony about the details of the assault was based
on second-hand knowledge from Hollimon and (2) that Hollimon was not credible. 
Appellant’s strategy is even more apparent from the fact that appellant tried, albeit
unsuccessfully, to call witnesses who would have corroborated the theory that
Hollimon was not credible. These witnesses were not allowed to testify because the
trial court agreed with the State that their testimony would be prejudicial and would
violate hearsay rules. Although he was not permitted to question witnesses for facts
relating to Hollimon’s truthfulness, or to her reputation for theft and violence,
appellant was permitted to offer evidence of Hollimon’s past judgments and
sentences, which contained two misdemeanor convictions for theft. Appellant also
offered evidence of an indictment for a felony (possession of a controlled substance),
but the trial court denied the offer.
          3.       The Overall Strength of the State’s Case
          Overall, the State’s case was strong in showing that appellant assaulted
Hollimon; however, the case lacked specific details as to the manner and means of the
assault, but for Hollimon’s erroneously admitted statements. Without Hollimon’s
erroneously admitted statements, the State also would not have been able to prove the
manner and means of the offenses. The photographs provided evidence that
Hollimon had suffered injuries, and the 9-1-1 tape showed that her call was
interrupted, but neither the photographs nor the tape could offer details of how the
charged offenses occurred.
E.      The Effect of Impeaching the Absent Witness
          From the record, it is unclear what additional impeachment appellant would
have been able to do beyond the two prior theft convictions that were before the jury.
F.      Resolution of the Harmless-Error Factors
          Although some of the factors favor a finding of harmlessness, one factor
outweighs all the others in our analysis: the State was able to prove the manner and
means of the two offenses only through the erroneously admitted evidence. 
          Because the State’s case, as far as showing the manner and means for the
charged offenses, relied on the details of the events as found in Hollimon’s
erroneously admitted statements, we conclude that there is a reasonable possibility
that such evidence impacted the convictions of appellant. Moreover, we further
determine that there is a reasonable possibility that a juror would not have been able
to conclude beyond a reasonable doubt that appellant “struck Hollimon with an
extension cord,” or that he “knocked the telephone from her hands,” but for the
erroneously admitted evidence. Therefore, after reviewing the record, we are unable
to say, beyond a reasonable doubt, that Deputy Chapman’s erroneously admitted
testimony of Hollimon’s statements did not contribute to appellant’s convictions. 
Thus, we hold that the error was harmful, and we sustain appellant’s sole point of
error.
          Conclusion
          We reverse the judgments of the trial court and remand the causes.


 
Tim Taft
Justice
 
Panel consists of Chief Justice Radack and Justices Taft and Hudson.



Publish. Tex R. App. P. 47.2(b).