# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00691-CR

**Eddie Lynn Tackett, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 391ST JUDICIAL DISTRICT NO. D-16-0544-SB, HONORABLE BRAD GOODWIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Eddie Lynn Tackett guilty of aggravated robbery, *see* Tex. Penal Code § 29.03, and assessed his punishment, enhanced by one previous felony conviction, at confinement for thirty-five years in the Texas Department of Criminal Justice, Institutional Division, *see id.* § 12.42. In one point of error, appellant argues that the trial court erred by admitting medical records that contained harmful testimonial statements that were not subject to cross-examination in violation of appellant's Sixth Amendment and Due Process constitutional rights. *See* U.S. Const. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 59 (2004). For the following reasons, we affirm the trial court's judgment of conviction.

**Background**[1]

In the early morning hours of February 3, 2016, police officers and paramedics were dispatched to a motel in San Angelo. Appellant and his wife were staying at the motel, and Kenneth Riza, who was sixty-nine years of age at the time, also was staying at the motel. According to Riza, (i) he was traveling on business and, after checking into the motel around 9:30 p.m., began walking around the motel's parking lot, following his doctor's advice to walk 10,000 steps a day; (ii) while he was walking around the parking lot, he encountered appellant who eventually stabbed, beat, hit, kicked, and left Riza tied up, naked, and covered with a bed sheet in Riza's motel room; (iii) when appellant left Riza's room, he took all of Riza's property that Riza had with him, including his personal computer, gun, phone, all of his clothes, and other personal items; (iv) appellant also took Riza's company truck that was in the motel's parking lot; and (v) after appellant left Riza's room, Riza untied himself, called the front desk, and asked the front desk to call the police. After the police and paramedics arrived, Riza was taken to a hospital by ambulance where he was admitted and received treatment for the injuries that he sustained during the incident. Riza was released from the hospital in the late afternoon of February 3rd, and the company truck was recovered sometime later, although it had been damaged.

Based on this incident, appellant was charged by indictment with the offense of aggravated robbery, and the jury trial occurred in July 2017. In addition to Riza, the State's

---

[1] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we provide only a general overview of the facts of the case here. We provide additional facts in the opinion as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and exhibits admitted at trial.

witnesses included responding police officers and investigators and the general manager of the motel. During his testimony, Riza identified appellant in open court as the "man who beat and robbed and tied [him] up," and described in detail what appellant did to him, including testifying that appellant stabbed him with a knife in the stomach and left hand and that the knife had an approximately four-inch blade. The officers and investigators also testified about their investigation, observations, and documentation of the scene and Riza. According to the investigators, Riza identified appellant and his wife in photo lineups, and a fingerprint found in the room rented by appellant and his wife was a positive match with appellant.

The State's exhibits included photographs taken at the scene and of Riza's injuries and, relevant here, a copy of Riza's medical records from the hospital where he was treated for the injuries that he sustained during the incident. The clinical report in the medical records reflects that Riza arrived by ambulance around 2:00 a.m. in the early morning hours of February 3, 2016, and that his "chief complaint" was a "reported physical assault" with injuries to the "head, face, abdomen and left hand," which "occurred today." The clinical report includes a section titled "Clinical Impression" with the following statements:

> Multiple superficial lacerations left lower quadrant of the abdomen and to the left hand. No foreign body present. Multiple contusions to the head.

Immediately below this section, the clinical report is electronically signed by "James Slauson, MD."

The State offered the medical records supported by a business records affidavit after its last witness and before the close of evidence.[2]  Defense counsel objected to the admission of the records with the "clinical impression" of Dr. Slauson.  Defense counsel argued:  "[O]nce it comes to a clinical impression and diagnosis, I believe that that crosses the line into testimonial, and that to admit the records with that in it, without a redaction, would violate *Crawford* and my client's right to cross examination and due process."[3]  The trial court overruled the objection and admitted the medical records without redacting the complained-of statements in the clinical report signed by Dr. Slauson.

The defense theory at trial was that Riza's account of what happened was not believable, and defense counsel sought to discount Riza's credibility and truthfulness, focusing on inconsistencies in his testimony and prior statements.  Among the areas of Riza's testimony that defense counsel attacked was his testimony concerning the severity of his injuries, and, in this line of questioning, defense counsel specifically referred to and questioned Riza about the description in the medical records from the hospital that "[i]t was a superficial laceration."[4]

---

[2]  *See* Tex. R. Evid. 803(6), 902(10).

[3]  *See Crawford v. Washington*, 541 U.S. 36, 59 (2004) ("Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.")

[4]  Defense counsel also referred to a statement in the medical records during closing argument that reflects that Riza did not have a loss of consciousness.  Riza testified that he lost consciousness when appellant was beating him and that no one at the hospital asked him if he had lost consciousness, but Riza's medical records from the hospital state in a section titled "History of Present Illness" that Riza "did not have a loss of consciousness."

The jury found appellant guilty of aggravated robbery. Following the sentencing phase of the trial, the jury found the enhancement paragraph true and assessed punishment at thirty-five years' confinement. The trial court rendered judgment in accordance with the jury's verdict. Appellant filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## Discussion

In his sole point of error, appellant contends that the trial court erred by admitting Riza's medical records as an exhibit because they contained testimonial statements not subject to cross-examination in violation of his Sixth Amendment and Due Process constitutional rights. Specifically, appellant argues that the above-quoted section titled "Clinical Impression" signed electronically by Dr. Slauson, who did not testify at trial, contained testimonial statements that were not subjected to cross-examination. Appellant also contends that the trial court's error in admitting the medical records was harmful.

**Were the complained-of statements testimonial in nature?**

As a threshold matter, whether appellant's right to confrontation was violated turns on whether the complained-of statements by Dr. Slauson were testimonial in nature. *See Crawford*, 541 U.S. at 59; *Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011) ("[T]o implicate the Confrontation Clause, an out-of-court statement must: (1) have been made by a witness absent from trial and (2) be testimonial in nature."); *see also Vinson v. State*, 252 S.W.3d 336, 338 (Tex. Crim. App. 2008) (explaining distinction between testimonial and non-testimonial statements (citing *Davis*

5

*v. Washington*, 547 U.S. 813, 821–22 (2006))). We review de novo a trial court's determination as to whether statements are testimonial or non-testimonial in nature. *See Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

Here the complained-of statements are part of Dr. Slauson's clinical report and describe Riza's injuries, and the record reflects that Dr. Slauson was one of the physicians who treated Riza at the hospital for the injuries that he sustained during the incident. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2 (2009) (noting that medical records created for treatment purposes "would not be testimonial under [court's] decision today"); *Smith v. State*, No. 05-09-01408-CR, 2011 Tex. App. LEXIS 5990, at *6 (Tex. App.—Dallas Aug. 2, 2011, pet. ref'd) (mem. op., not designated for publication) (concluding that "medical records—minus two-page social worker form—were created for treatment purposes and were therefore not 'testimonial' within the meaning of *Crawford*"); *Casillas v. State*, No. 04-09-00393-CR, 2010 Tex. App. LEXIS 6928, at *8–11 (Tex. App.—San Antonio Aug. 25, 2010, pet. ref'd) (mem. op., not designated for publication) (reviewing record to determine whether report prepared by doctor "was created for treatment purposes" and concluding that it was because report was "generated *for the purpose of diagnosing or treating*" victim of sexual assault); *Weiss v. State*, No. 02-07-00390-CR, 2009 Tex. App. LEXIS 9453, at *38 (Tex. App.—Fort Worth Dec. 10, 2009, no pet.) (mem. op., not designated for publication) ("Medical records created for purposes of treatment and admitted under the business records exception are not testimonial under *Crawford*.").

Riza's testimony was unchallenged that he was transported to the hospital in the early morning hours of February 3, 2016, for medical treatment after paramedics treated him at the scene

and that he was admitted to the hospital and then released in the late afternoon. Consistent with this testimony, the medical records from the hospital, including the complained-of statements in the clinical report, reflect that they were created for purposes of diagnosing and treating Riza during that time period.[5] *See Melendez-Diaz*, 557 U.S. at 312 n.2; *Casillas*, 2010 Tex. App. LEXIS 6928, at *8–11. Thus, we conclude that the complained-of statements were not testimonial in nature and that the trial court did not err in admitting the medical records with those statements included. *See Melendez-Diaz*, 557 U.S. at 312 n.2; *Crawford*, 541 U.S. at 59.

**Harm Analysis**

We further conclude that, even if the trial court erred in admitting the complained-of statements, such error would have been harmless. *See* Tex. R. App. P. 44.2(a) (addressing constitutional error); *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010) (describing harm analysis for Confrontation Clause error); *Barron v. State*, No. 03-11-00519-CR, 2013 Tex. App. LEXIS 9268, at *11–12 (Tex. App.—Austin July 26, 2013, no pet.) (mem. op., not designated for publication) (same). The following factors are relevant to the harm analysis for Confrontation Clause error:

> 1) how important was the out-of-court statement to the State's case; 2) whether the out-of-court statement was cumulative of other evidence; 3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and 4) the overall strength of the prosecution's case.

---

[5] Riza testified that after the police and paramedics arrived at the motel, the paramedics treated him by "put[ting] a bandage over the incision on [his] stomach and [getting him] ready to transport," that he was then transported to the hospital where he was admitted, and that he "was released from the hospital on February 3rd, late in the afternoon."

7

*Langham*, 305 S.W.3d at 582 (quoting *Scott v. State*, 227 S.W.3d 670, 690–91 (Tex. Crim. App. 2007)).

Appellant argues that the admission of the medical records was harmful error "because it established crucial medical evidence, and medically corroborated [Ritz]'s injuries, which are an essential element of the crime of aggravated robbery." Appellant further argues that the evidence "was not cumulative testimony from a medical expert because none was offered by the State" and that the jury "afforded great weight" to the medical records "as evidenced by the fact that the jury requested the complainant's medical record during its deliberations." The record, however, reflects that the complained-of statements, providing a description of Riza's injuries without any description of how the injuries were sustained, were not crucial to the State's case against appellant.

As charged here, the State's burden was to prove that appellant had committed theft and, in the course of committing theft and with intent to obtain or maintain control of the property, threatened or placed Riza in fear of imminent bodily injury or death. *See* Tex. Penal Code § 29.03(a)(3)(A) (listing elements of aggravated robbery when victim is sixty-five years of age or older and, in that case, requiring defendant to have committed robbery and to have "cause[d] bodily injury to another person or threaten[ed] or place[d] another person in fear of imminent bodily injury or death"); *see also id.* §§ 1.07(a)(8) (defining "bodily injury" to mean "physical pain, illness, or any impairment of physical condition"), 29.02 (listing elements of robbery). The State's evidence was unchallenged that Riza was older than sixty-five years of age; his company truck, clothes, and all of his other personal property were taken from Riza; and he sustained injuries, including lacerations on his abdomen and hand and bruises and contusions to his face.

8

Riza testified in detail about what happened, including listing the property that was taken from his motel room as well as the company truck and describing what appellant did to him and his resulting injuries. In addition to stabbing him, Riza testified that appellant hit Riza with "his fists" on the side of Riza's head and "kicked [Riza] there multiple times" before Riza "lost consciousness" and that Riza "was in pain." Riza also answered, "Yes, I was," when asked, "[A]t the time all this was happening and when [appellant] was holding this knife on you, were you in fear of imminent bodily injury or death from the situation?" And he answered, "Yes, sir," when asked the follow-up question, "And were you afraid that that knife that [appellant] had might be something that he might be able to use to kill you with if things didn't go right?" As to the gun that Riza had with him at the time of the incident, he testified that it was in his coat pocket, but that he did not try to pull it out because appellant threatened to kill him, testifying as follows:

> Apparently [appellant] had detected the pistol because he told me if I pulled that gun out, he would kill me, and [appellant's wife] said, "Yes, he will," and I froze and that was too much.

He then explained that he did not try to pull the gun out from his coat pocket because he "was scared."

The complained-of statements by Dr. Slauson describing the injuries also were cumulative of and corroborated by other evidence. As noted above, Riza testified about his injuries, including that he had been stabbed, and he identified the photographs that were taken at the scene

9

that showed "the incision" on Riza's abdomen and "bruising and contusions to the left side of [his] face and [his] left eye."[6]

Finally, the overall strength of the State's case was substantial. The defense theory was that Riza's version of what happened was not believable, but Riza identified appellant in a photo lineup and then again at trial as the "man who beat and robbed and tied [him] up," and the evidence that appellant and his wife were at the motel on the night of the offense was not challenged. This evidence included appellant's fingerprint and the video from the motel's front desk showing appellant's wife. Further, Riza testified that, after appellant tied him up and left the room, he heard "[his] company truck start," and that appellant "cleaned out [his] room," taking "everything," including all of his clothes. Finally, the responding officers confirmed in their testimony that Riza was "wearing nothing but a bedsheet" and had lacerations on his abdomen and hand when they arrived.

---

[6] During cross-examination of Riza, defense counsel actually referred to one of the complained-of statements—that the lacerations were "superficial"—when asking Riza about the extent of the wound on his abdomen from the knife:

Q. It was a superficial penetration; isn't that what the hospital said?
A. I don't know if they called it a superficial.
Q. You were not stabbed? The knife did not go inside of you?
A. It went in a certain distance, it sure did.
Q. The cut that you have on your stomach looks like a cut you could get from walking by a table not seeing where you are going, right? It could be anything?
A. But it was a knife wound from Eddie Tackett.
Q. You didn't get stitches, did you?
A. No, they said that I wouldn't have to have stitches.
Q. Because it just—the cut that you had just barely scraped the surface, right?
A. Well, they said it wouldn't have to have stitches, but I was stabbed by Eddie Tackett.

10

Considering the relevant factors, we conclude that, even if the trial court erred in admitting the medical records with the complained-of statements, such error would have been harmless. *See Langham*, 305 S.W.3d at 582; *Scott*, 227 S.W.3d at 690–91.[7]

## Conclusion

Having overruled appellant's sole point of error, we affirm the trial court's judgment of conviction.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   August 15, 2018

Do Not Publish

---

[7] "[T]he reviewing court may also consider the source and nature of the error, to what extent, if any, it was emphasized by the State, and how weighty the jury may have found the erroneously admitted evidence to be compared to the balance of the evidence with respect to the element or defensive issue to which it is relevant." *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010) (quoting *Scott v. State*, 227 S.W.3d 670, 690–91 (Tex. Crim. App. 2007)).  On this record, these additional factors provide further support for our conclusion that, even if the trial court erred in admitting the medical records with the complained-of statements, such error would have been harmless.