In The


 

Court of Appeals



Ninth District of Texas at Beaumont



________________



NO. 09-07-00256-CR


 _____________________



NATHANIEL DYWANE CLARK, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Cause No. 96180







OPINION

 A jury found Nathaniel Dywane Clark guilty of murder and assessed punishment at
fifty years of confinement in the Texas Department of Criminal Justice Institutional Division. 
See Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003). Clark presents three issues for
review. He argues the trial court erred by questioning two witnesses during trial in the
presence of the jury. He maintains the trial court erred by allowing into evidence statements
which he asserts are hearsay. Clark also argues that, in violation of his right to due process,
the trial court deprived Clark of his right to confront witnesses as provided by the
Confrontation Clause. Finding no reversible error, we affirm the judgment.

Facts


 Miesha Ross testified that on the day of the shooting she and her fiancé, Corey
Williams, went to a Beaumont apartment Clark shared with Sherry Woods. The four smoked
marijuana and "embalming fluid" while they watched a movie in the living room. Clark
began acting strangely and "saying things like he [was] going to have to kill everybody[.]"
Ross attributed the strange behavior to the drugs. At first, Woods did not seem concerned, 
but Ross began to feel threatened and asked Woods to do something.

 Clark went to the bedroom and returned waving a gun. Ross was scared. She went
into the kitchen. Woods tried to get Clark to give her the gun clip. Ross went into the
bathroom. She could see into the living room through a crack in the door. The other three
were in the living room. Williams was sitting on the couch. Clark had the gun in his hand. 
Ross heard approximately five gunshots, but she could not see anyone; she then saw Woods
holding her side. Woods left the apartment, and Clark followed her. 

 Ross found Williams on the couch. She saw blood stains on his shirt. As Ross fled,
she saw Woods at an adjacent apartment building, and saw Clark in the parking lot. Woods,
bleeding and screaming in pain, managed to fall into a neighbor's doorway. 

 The neighbor testified that he called 9-1-1. Clark approached and angrily told him to
put the phone down. Clark "acted high" on drugs. The neighbor hung up the phone. Clark
tried to pick up Woods; the neighbor told Clark to leave Woods alone, but to press a towel
to her wound. The neighbor then left his apartment as EMS arrived. Woods survived, but
Williams died at the scene.

Trial Questioning By Judge


 Clark complains of the trial judge's questioning of two witnesses in the jury's
presence. The first instance involved questions to Officer Mireles, an officer who testified
concerning the scene of the shootings:

 [State]: Once the defendant was taken into custody, did
you have occasion to approach the woman who was
laying partial[ly] in and partially out of the apartment?

 [Witness]: Yes, sir, I did.

 . . . . 

 [State]: Were you able to determine if she was, in fact,
injured in any fashion?

 [Witness]: Yes, sir. She had a - - what appeared to be a
gunshot wound in her abdomen, stomach region.

 . . . . 

 [State]: Did she indicate to you in any fashion how she
became wounded?

 [Witness]: Yes, sir, she did.

 [Defense counsel]: That will be hearsay, Your Honor.

 [State]: Your Honor, again, I've laid the predicate for
excited utterance.

 The Court: All right. The - - the reason that this is being 
admitted for - - is for what purpose now?

 [State]: That she indicated who her assailant was while
she was - - or that she was able to respond to the officer
when the officer asked who her assailant was, who had
wounded her while she was still clearly suffering from
the wound and still experiencing the fact of having
suffered the wound.

 The Court: And, Officer Mireles, you're - - you were
questioning this person for what purpose? Is this normal
and customary in your investigation?

 [Witness]: Initially, yes, sir. We try to determine who caused
- - what happened. In case she was injured or she wasn't
going to live, at least we could have something from a
witness or a victim of a crime to indicate what had
happened from their - - from their viewpoint.

 The Court: Are you attempting to determine what should be
done for treatment or getting her attended in some way
for her wound?

 [Witness]: Not necessarily; but at least we would know if it
was a gunshot wound or a stab wound or something for
EMS.


The court recessed and, out of the hearing of the jury, defense counsel stated the hearsay
objection again. The trial court overruled the objection and admitted the statement. See Tex.
R. Evid. 803(2) (excited utterance exception to hearsay rule). Defense counsel did not object
to the trial court's questioning of the witness.

 Clark also complains of an inquiry by the trial judge made to a ballistics expert. The
State's ballistics expert explained that he tested the alleged murder weapon by test-firing the
weapon into a water tank "maybe [three-and-a-half or four-feet] deep." After the attorneys
concluded their questioning, the trial judge requested clarification:

 The Court: Are you - - from your experience and training, are
you saying - - and you use the method of firing into a
water tank. But a bullet will only travel three or four feet
in a tank of water?

 [Witness]: Contrary to what we all - - not all of us are old
enough to watch Sea Hunt and some other things where
the bullets travel many, many feet. The tank is maybe
[three-and-a-half] feet deep and maybe 10 foot long; and
I've shot everything in there from an M-16 to an AK-47
to every pistol that we've had, and we've never poked a
hole in it yet.

 The Court: Would you - - so, water displaces the energy of a
bullet very quickly?

 [Witness]: Yes, sir. And a lot of that, again, is the angle, too. 
Now we're firing at a pretty steep angle, but it slows it
down a lot. It doesn't harm the bullet. The bullet falls to
the bottom. The bottom of the tank is like a bath mat on
it. The bath mat is not chewed up; so, we can't actually
see it as it happens. But that's how it works. 


Counsel did not object to the trial judge's participation.

 A trial judge should not make any statement calculated to impart to the jury in a
criminal case the judge's opinion of the case. Tex. Code Crim. Proc. Ann. art. 38.05
(Vernon 1979); Rodrigues v. State, 8 S.W.2d 149, 150, 110 Tex. Crim. 267, 269 (1928). The
Code of Criminal Procedure also provides that when ruling on the admissibility of evidence,
a judge should simply state whether or not the evidence is admissible, and not discuss or
comment upon the weight of the evidence or its bearing on the case. Tex. Code Crim. Proc.
Ann. art. 38.05; see also Rodrigues, 8 S.W.2d at 150 ("[T]he court should refrain from active
participation in the examination of witnesses[.]"). The Court of Criminal Appeals has
cautioned: "We note that Texas' staunch loyalty to adversarial principles has been
demonstrated in its stated disapproval of the nonadversarial practice of trial judges'
examination of witnesses and in its rejection of Federal Rule of Evidence 614 which
authorizes judges to call and interrogate witnesses." Morrison v. State, 845 S.W.2d 882, 888
n.18 (Tex. Crim. App. 1992). One risk is that the jury may perceive a question as indicating
assistance for the party who called the witness. See Harrell v. State, 39 Tex. Crim. 204, 225,
45 S.W. 581, 586 (1898). In Harrell, the Court explained: "It would be almost impossible
for the court to take part in the examination of witnesses without impressing the jury with the
belief that the court believed or disbelieved the testimony of the witnesses, whether the court
intended to make such an impression or not." Id. The Court noted that it is not "any part of
the duty of a judge to take in hand the examination or cross-examination of witnesses." Id. 
In Blue v. State, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000) (plurality op.), a trial judge's
comments "which tainted [the defendant's] presumption of innocence in front of the venire,
were fundamental error of constitutional dimension and required no objection." 

 None of the trial judge's questions to the witnesses in front of the jury in this case
tainted the defendant's presumption of innocence or suggested partiality. See Jasper v. State,
61 S.W.3d 413, 421 (Tex. Crim. App. 2001) ("None of the trial judge's comments rose to
such a level as to bear on the presumption of innocense or vitiate the impartiality of the
jury."). The trial judge's questions sought clarification, in one instance to assist in ruling on
an objection, and in the other to clarify testimony already provided. See id. In these
circumstances, counsel was required to object to the trial court's participation in questioning
the witness to preserve the complaint for appellate review. See Tex. R. App. P. 33.1(a). Trial
counsel did not object; therefore, the complaint was waived. Furthermore, we see no injury
to Clark from the judge's participation in these two instances given the purpose and very
limited scope of the questioning. See generally Ash v. State, 420 S.W.2d 703, 705 (Tex.
Crim. App. 1967). We overrule issue one.

Excited Utterance


 In his second issue, Clark argues that the trial court denied him his right as a matter
of due process to confront Sherry Woods, an unavailable witness whose statements the trial
court admitted against him. See Clay v. State, 240 S.W.3d 895, 902 (Tex. Crim. App. 2007)
("This right was made applicable to state criminal prosecutions by the Due Process Clause
of the Fourteenth Amendment." ). In his third issue, Clark argues the trial court erred in
ruling that Woods's statements fell under the excited utterance exception to the hearsay rule. 
He also argues that the Confrontation Clause barred the admission of the statements, because
the State failed to prove that Clark had a prior opportunity to cross-examine Woods and that
Woods was unavailable.

 We consider the excited utterance exception first. An appellate court reviews a trial
court's ruling on the admissibility of evidence for an abuse of discretion. Zuliani v. State,
97 S.W.3d 589, 595 (Tex. Crim. App. 2003). Hearsay is a statement, other than one made
by the declarant while testifying at a trial or hearing, offered into evidence to prove the truth
of the matter asserted. Tex. R. Evid. 801(d). For hearsay to be admissible, the statement
must fit into an exception provided by a statute or the Rules of Evidence. Tex. R. Evid. 
802; see also Zuliani, 97 S.W.3d at 595. 

 Rule 803(2) of the Texas Rules of Evidence sets out the excited utterance exception
to the rule excluding hearsay. Tex. R. Evid. 803(2). An "excited utterance" is "[a] statement
relating to a startling event or condition made while the declarant was under the stress of
excitement caused by the event or condition." Id. In determining whether a hearsay
statement is admissible as an excited utterance, the court may consider the length of time
between the occurrence and the statement, the declarant's demeanor, whether the statement
is made in response to a question, and whether the statement is self-serving. Apolinar v.
State, 155 S.W.3d 184, 187 (Tex. Crim. App. 2005). "The critical determination is 'whether
the declarant was still dominated by the emotions, excitement, fear, or pain of the event' or
condition at the time of the statement." Zuliani, 97 S.W.3d at 596 (quoting McFarland v.
State, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992)). 

 Officer Mireles testified that he was dispatched to an apartment complex in Beaumont
where a report indicated the possibility a man was armed. At least one other officer arrived
at the scene before Mireles. Ten to fifteen seconds after arriving at the scene, Mireles
identified a man who matched the suspect's description. Mireles saw Woods on the floor in
the doorway of the apartment. She held a towel to her bleeding stomach and appeared to be
in pain. She was kicking her feet, labored in her breathing, moaning, rolling her head, and
fluttering her eyes. Mireles asked her what happened and she responded, "He shot me."
Mireles was unsure of who she was referring to and asked her again. She again stated, "He
shot me," and then pointed to Clark. At the time, no one had come forward as a witness, and
EMS had not begun treating her. Mireles was trying to secure the crime scene. 

 Woods made the statements "relating to a startling event or condition," the shooting,
while she was under the stress of excitement caused by the shooting. The trial court did not
abuse its discretion by overruling Clark's hearsay objection to the statements. See Zuliani,
97 S.W.3d at 596 (statements of "scared to death" declarant repeatedly whispering "help me"
to police officers twenty hours after being assaulted were an excited utterance); Davis v.
State, 268 S.W.3d 683, 703-04 (Tex. App.--Fort Worth 2008, pet. filed) (statement to a
police officer responding to a 9-1-1 call by a woman "clearly upset," crying, and with hands
shaking badly was properly admitted by trial court as an excited utterance).

 The Confrontation Clause


 The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal
prosecutions, the accused shall enjoy the right . . .to be confronted with the witnesses against
him[.]" U.S. Const. Amend. VI. The Confrontation Clause is made applicable to the states
through the Due Process Clause of the Fourteenth Amendment. Pointer v. Texas, 380 U.S.
400, 403-05, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The principal concern of the
Confrontation Clause is "to ensure the reliability of the evidence against a criminal defendant
by subjecting it to rigorous testing in the context of an adversary proceeding before the trier
of fact." Maryland v. Craig, 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). 
Even when a statement offered against a defendant is admissible under evidentiary rules, the
statement may implicate the Sixth Amendment's Confrontation Clause. Gonzalez v. State,
195 S.W.3d 114, 116 (Tex. Crim. App. 2006), cert. denied, 127 S.Ct. 564 (2006); see also
Wall v. State, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006) (holding that a statement
admissible as an excited utterance could still constitute a testimonial statement for purposes
of a Confrontation Clause analysis). 

 The Confrontation Clause bars the admission of testimonial statements of a witness
who does not appear at trial, unless she was unavailable to testify and the defendant had a
prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 53-54, 124
S.Ct. 1354, 158 L.Ed.2d 177 (2004). Clark argues the Confrontation Clause barred the
admission of Woods's statements because the State failed to prove that Clark had a prior
opportunity to cross-examine Woods and that Woods was unavailable. 

 Woods, Clark's girlfriend, survived the shooting. When Clark challenged Woods's
unavailability, the State informed the trial court that investigators of the District Attorney's
office and officers of the Sheriff's Department Warrant Division were unable to locate her
at her last known addresses to execute subpoenas issued in the past as well as for trial. (1)

 The State need not prove unavailability and prior opportunity for cross-examination
to defeat a Confrontation Clause challenge unless the statement is covered by the
Confrontation Clause because it is "testimonial." See id. at 68. Said differently, the initial
question to be addressed under the Confrontation Clause is whether the statement is
"testimonial," because "[o]nly statements of this sort cause the declarant to be a 'witness'
within the meaning of the Confrontation Clause." Davis v. Washington, 547 U.S. 813, 821,
126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (citation omitted). In Davis, the Supreme Court
explained the test it applied there: 

 Without attempting to produce an exhaustive classification of all conceivable
statements -- or even all conceivable statements in response to police
interrogation -- as either testimonial or nontestimonial, it suffices to decide the
present cases to hold as follows: Statements are nontestimonial when made in
the course of police interrogation under circumstances objectively indicating
that the primary purpose of the interrogation is to enable police assistance to
meet an ongoing emergency. They are testimonial when the circumstances
objectively indicate that there is no such ongoing emergency, and that the
primary purpose of the interrogation is to establish or prove past events
potentially relevant to later criminal prosecution.


Id. (footnote omitted). 


 A court considers the totality of the circumstances in determining whether a statement
is testimonial. The nonexclusive factors a court considers are: (1) whether the situation was
still in progress; (2) whether the police questions sought to determine what was happening
as opposed to what had happened in the past; (3) whether the primary purpose of the
interrogation was to render aid rather than to memorialize a possible crime; (4) whether the
questioning was conducted in a separate room, away from the alleged attacker; and (5)
whether the events were deliberately recounted in a step-by-step fashion. See Vinson v. State,
252 S.W.3d 336, 339 (Tex. Crim. App. 2008).

 Mireles testified that when he asked Woods what happened, he was trying to secure
the crime scene. Clark was in custody but no witnesses had come forward, and Mireles did
not know if Clark was the correct suspect. Mireles wanted to know whether he had the
correct suspect. Woods had not received medical treatment. Mireles asked her what
happened in part to determine whether "it was a gunshot wound or a stab wound or
something for EMS." Mireles testified his normal and customary initial investigation
involves asking for the information to determine what happened, and also in the event "she
wasn't going to live," he would "have something." (2) The questioning was in Clark's
presence. The events were not deliberately recounted in a step-by-step fashion, and the
questioning was not formal. Woods's statements were made at the scene while the situation
was still in progress and while Woods was in distress. 

 As in Vinson, the trial court could reasonably find in this case that the officer was still
assessing an emergency situation. See Vinson, 252 S.W.3d at 340. The trial court could
reasonably conclude the primary purpose of the interrogation -- even though not the only
purpose -- was to enable police assistance to meet the ongoing emergency. See id. Because
of the non-testimonial nature of the statements, their admission did not violate the
Confrontation Clause. 

 We overrule issues two and three. The trial court's judgment is affirmed.

 AFFIRMED.

 ____________________________

 DAVID GAULTNEY

 Justice


Submitted on February 5, 2009

Opinion Delivered April 1, 2009

Publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. The parties do not argue that the rule of forfeiture applies here. See Davis v.
Washington, 547 U.S. 813, 833, 126 S.Ct. 2266, 165 L.Ed. 2d 224 (2006) ("That is, one who
obtains the absence of a witness by wrongdoing forfeits the constitutional right to
confrontation.").
2. The Supreme Court in Crawford noted, "[w]e need not decide in this case whether
the Sixth Amendment incorporates an exception for testimonial dying declarations. If this
exception must be accepted on historical grounds, it is sui generis." Crawford, 541 U.S. at
56 n.6.