# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00225-CR

---

**Blake Neil Sissel, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
### NO. C-1-CR-17-218392, THE HONORABLE MIKE DENTON, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Blake Neil Sissel of the misdemeanor offense of assault family violence. *See* Tex. Penal Code § 22.01(a)(1), (b). Based on the parties' agreement as to punishment, the trial court sentenced appellant to a fine of $4,000 and confinement for one year in the county jail but suspended imposition of $3,700 of the fine and the sentence of confinement and placed him on community supervision for two years. *See* Tex. Code Crim. Proc. art. 42A.053. Raising two issues, appellant challenges out-of-court statements that were admitted at trial. For the following reasons, we affirm the trial court's judgment of conviction.

### Background

Based on an incident that occurred at his apartment where he resided with his girlfriend, appellant was charged by information with assault family violence. The State alleged

that on or about December 12, 2017, appellant "did then and there intentionally, knowingly, and recklessly cause bodily injury to [appellant's girlfriend], by striking [her] on and about the head with [appellant]'s hand, and striking [her] on or about the torso with [appellant]'s hand."

The State's witnesses at the jury trial were a 911 operator, two of the police officers who responded to the incident, other officers, appellant's girlfriend who was called as a hostile witness, and an expert who testified about family violence dynamics. Appellant's girlfriend, who testified that she was appellant's fiancée and that they had been together for "[n]early five years," also testified as a defense witness. The State's exhibits included an audio recording of the 911 call, a video recording from the body camera of one of the responding officers, still photographs from the body-camera recording including photographs of appellant's girlfriend that show injury to her face, and a recorded jail call between appellant and his girlfriend in which he said he was sorry. Defense counsel objected to the admissibility of the 911 call, the body-camera recording, and the jail call, but counsel did not object to the photographs.

The jury heard evidence that a mother and her 12-year-old daughter lived next door to appellant and his girlfriend on December 12, 2017. On that date, the mother called 911 at 9:49 p.m. to report a disturbance at appellant's apartment. The mother was not home but was relaying what her daughter, who was home and "freaking out," was telling her. The mother stated that "the male resident is beating the crap out of the female resident." The call taker asked for contact information and the reason for the call. The mother provided her contact information and further stated: "I'm sorry, my neighbor is beating the crap out of his girlfriend. He's throwing her into our shared wall. He's screaming about punching her in the face." In response to the 911 call, one of the responding officers testified that he and other officers were dispatched

2

to the "disturbance hot shot," which he explained "means there's an act of violence, both subjects are on scene, and it's going on right now" and that "[i]t's our highest priority so we run lights and sirens to that call."

This officer testified that he arrived at the apartment at 9:51 p.m., which was two minutes after the 911 call, and heard a "verbal argument" and a male voice "yelling" that "sounded angry, possibly intoxicated." After the officer knocked on the front door and identified himself as the police, there was "[i]mmediate silence," which the officer testified was "a little concerning." The officer continued to knock "[r]oughly 10" "separate times" with no response. Around this time, the daughter from next door came out, and the officer asked her questions "to determine if there were circumstances to make entry into that apartment to do a check welfare [sic]," "to verify that the disturbance is not violent and make sure that whoever is in there is okay and they're not needing our assistance or medical assistance." The officer testified that the daughter "seemed worried, scared" and told him that she heard a "loud disturbance next door," "was concerned because she heard a bang against the wall or an object was thrown against the wall," and also "heard specifically a female voice yelling that she had been punched in the face and then a male voice responding, I didn't punch you in the face I punched you in the shoulder."

Around this time, the other responding officer who testified at trial made contact with appellant and his girlfriend on the apartment's back porch. Appellant, who had a bruise on the knuckle of his right-hand little finger, was handcuffed and escorted away from the apartment. The officers testified that appellant's injury to his finger and his girlfriend's injury to her face appeared fresh and that the bruising and swelling on his girlfriend's face was increasing. Consistent with the body-camera recording, the officers also testified that appellant's girlfriend refused to: (i) answer questions about what had happened or how she was injured, (ii) receive

3

medical treatment, or (iii) allow the officers to take photographs of her. She asked the officers to leave after an officer told her that they were wearing body cameras.

The State also offered evidence of prior incidents of domestic violence by appellant against his girlfriend. The officers and appellant's girlfriend testified that an incident between appellant and his girlfriend in Arizona in June 2017 resulted in appellant's arrest. An officer also testified about a "hot shot" disturbance between appellant and his girlfriend in December 2015 where appellant's girlfriend was the caller. When the officer arrived, appellant's girlfriend was visibly upset, crying, and had a "clump of hair in her hand," and told the officer that appellant "had pulled her hair from her head and that had caused her pain."

In her testimony during the State's case in chief, appellant's girlfriend did not deny that she and appellant were the only ones in the apartment or that she had been injured on the night of the incident, but she denied that appellant caused her injury on that night or that he had committed prior acts of violence against her. As to the night of the incident, appellant's girlfriend testified that: (i) she injured herself because she was "really intoxicated, just got belligerent and [she] allowed a verbal altercation to get out of hand," "lunged" for appellant when he started to leave, "tripped," and hit her face on a shoe rack by the front door; (ii) the shoe rack "shattered into pieces"; and (iii) the damage to the wall in their apartment was caused by a doorknob. Defense counsel also offered photographs that show a doorknob lining up with damage on a wall. The admitted photographs of the apartment's interior and the area by the front door as well as the officer's body camera footage, however, do not show a shoe rack or pieces of wood or a shoe rack. Appellant's girlfriend explained in her testimony during the defense's case-in-chief that she and appellant moved the broken shoe rack before the police arrived. She also denied that appellant had pulled her hair out during the 2015 incident.

4

The jury found defendant guilty of the offense as charged, the parties reached an agreement as to punishment, and the trial court sentenced appellant in accordance with the agreement. This appeal followed.

## Analysis

In two issues, appellant contends first that the trial court's admission of the 911 call and the daughter's out-of-court statements through the officer's testimony violated the Confrontation Clause and second that the admission of inadmissible hearsay in the 911 call, the daughter's statements to the officer, and the body-camera recording affected his substantial rights.

## Hearsay

We begin with appellant's second issue that challenges the trial court's admission of statements in the recordings of the 911 call and body camera and by the daughter to the officer at the scene. Appellant argues that the statements are inadmissible hearsay and that the exceptions that the State raised at trial—excited-utterance and present-sense-impression—do not apply to the 911 call or the daughter's statements to the officer and that the body-camera recording "was introduced as improper impeachment evidence."

### Standard of Review and Applicable Law

Hearsay is a statement, other than one made by the declarant while testifying at a trial, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is generally inadmissible except as provided by the rules of evidence or statute. *Id.* R. 802. Further, "[w]hen hearsay contains hearsay, the Rules of Evidence require that each part of the combined statements be within an exception to the hearsay rule." *Sanchez v. State*,

5

354 S.W.3d 476, 485–86 (Tex. Crim. App. 2011); *see* Tex. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.").

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *see Dabney v. State*, 492 S.W.3d 309, 316 (Tex. Crim. App. 2016) ("[B]ecause trial courts are in the best position to decide admissibility questions, appellate courts must review a trial court's decision under an abuse-of-discretion standard."). An abuse of discretion does not occur unless the trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles." *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). Further, we may not reverse the trial court's ruling unless the "decision falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *see Henley*, 493 S.W.3d at 83 ("Before a reviewing court may reverse the trial court's decision, 'it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008))). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Henley*, 493 S.W.3d at 93 (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

The erroneous admission of evidence generally is considered non-constitutional error. *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007); *see Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (explaining that erroneous admission of evidence was non-constitutional error). Non-constitutional error requires reversal only if it affects the substantial rights of the accused. Tex. R. App. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93

(Tex. Crim. App. 2011); *see* Tex. R. Evid. 103 (stating that trial court error admitting or excluding evidence must affect "substantial right of the party"). In making this determination, we "consider everything in the record." *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002); *see Barshaw*, 342 S.W.3d at 93; *Solomon*, 49 S.W.3d at 365.

### 911 Call

Overruling appellant's hearsay objection, the trial court admitted the recording of the 911 call. The mother, who was not at home when she made the call, and her daughter did not testify at trial. Much of the recording is the mother giving identification and location information such as the apartment address where the disturbance was occurring but she also interrupted the operator with present tense updates like "the male resident is beating the crap out of the female resident next door," "[h]e's throwing her into our shared wall," and "[h]e's screaming about punching her in the face."

In response to defense counsel's objection to the admissibility of the recording, the State cited the excited-utterance exception to the rule against hearsay.[1] *See* Tex. R. Evid. 803(2). This exception allows the admission of an out-of-court statement "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." *See id.* R. 803(2). For the excited-utterance exception to apply, (1) the exciting event must be startling enough to evoke a truly spontaneous reaction from the declarant, (2) the reaction to the startling event must be quick enough to avoid the possibility of fabrication, and (3) the resulting statement should be sufficiently "related to" the startling event to ensure the reliability and

---

[1] At trial, the State also cited the present-sense-impression exception to support the admission of the recording of the 911 call. Because we conclude that the mother's statements in the recording are admissible under the excited-utterance exception, we need not address this alternative basis for upholding the admission of the recording. *See* Tex. R. App. P. 47.1.

7

trustworthiness of that statement. *McCarty v. State*, 257 S.W.3d 238, 241–42 (Tex. Crim. App. 2008); *see Zuliani v. State*, 97 S.W.3d 589, 595–96 (Tex. Crim. App. 2003) (discussing excited-utterance exception); *Reyes v. State*, 48 S.W.3d 917, 919–20 (Tex. App.—Fort Worth 2001, no pet.) (same).

Appellant argues that, even if the daughter's statements to her mother were excited utterances, the mother's statements cannot be admitted under this exception because she was not at home and, therefore, did not perceive or witness the incident. The event, however, need not be the crime itself. *See* Tex. R. Evid. 803(2); *McCarty*, 257 S.W.3d at 238 (holding that "event about which an excited utterance is made" does not have to be "same event that caused the declarant's excitement"). In the recording, the mother states that her daughter is "freaking out," and she appears to be either communicating with her daughter or to have just communicated with her when she called 911. The trial court reasonably could have concluded that the mother was relaying contemporaneous communications from her daughter, the mother's statements were related to the startling event of her daughter's call about the next-door disturbance, and the mother's statements on the 911 call were made while she was under the stress of excitement or dominated by her emotions caused by her daughter's distraught call.

Further, even if the 911 call was not admissible to prove the truth of the mother's statements, the trial court reasonably could have concluded that the content of the call was independently admissible to explain why the police were dispatched to appellant's apartment and why they arrived so quickly. *See* Tex. R. Evid. 801(d); *Bailey v. State*, No. 14-04-00325-CR, 2006 Tex. App. LEXIS 1267, at *19 (Tex. App.—Houston [14th Dist.] Feb. 16, 2006, no pet.) (mem. op., not designated for publication) (concluding that "evidence about the existence and content of the 911 call would have been independently admissible, not for the truth of the

8

assertions on the tape, but to provide an explanation for why the officers were present at appellant's home").

For these reasons, we conclude that the trial court did not abuse its discretion when it admitted the recording of the 911 call. *See Henley*, 493 S.W.3d at 93 (explaining that evidentiary ruling will be upheld if it is correct on any legal theory applicable to case).

**Daughter's Statements to Officer**

Overruling defense counsel's hearsay objection, the trial court allowed one of the responding officers to testify about the daughter's statements to him at the scene. The officer testified that the daughter told him that she heard a "bang" against the shared wall, a female voice say "she had been punched in the face,"[2] and a male voice respond that he did not punch her in the face but in the shoulder.

Another exception to the rule against hearsay is the present-sense-impression exception.[3] *See* Tex. R. Evid. 803(1). The present-sense-impression exception allows the admission of out-of-court statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it." *Id.* "The present sense impression exception to the hearsay rule is based upon the underlying premise that the contemporaneity of the event and the declaration ensures reliability of the statement." *Brooks v. State*, 990 S.W.2d 278, 287 (Tex.

---

[2] For argument purposes, appellant concedes that appellant's girlfriend's alleged statements that the daughter relayed to the police officer would fall under the excited-utterance or present-sense-impression exception "because if [his girlfriend] in fact did yell that she was punched in the face, she was under the emotion of the moment, describing what was currently happening."

[3] At trial, the State cited the excited-utterance exception to support the admission of the officer's testimony about the daughter's statements to him. Because we conclude that the daughter's statements were admissible under the present-sense-impression exception, we need not address this alternative basis for the admission of this evidence. *See* Tex. R. App. P. 47.1.

Crim. App. 1999); *see Rabbani v. State*, 847 S.W.2d 555, 560 (Tex. Crim. App. 1992) (explaining rationale for present-sense-impression exception); *Williams v. State*, No. 03-01-00425-CR, 2002 Tex. App. LEXIS 5401, at *10–11 (Tex. App.—Austin July 26, 2002, no pet.) (not designated for publication) (same). "The closer the declaration is to the event the less likely there will be a calculated misstatement." *Brooks*, 990 S.W.2d at 287.

Appellant argues that this exception does not apply because the daughter's "statements were not made while the event was ongoing" but "after the fact." The trial court, however, reasonably could have concluded that the daughter's statements to the officer described an event—the next-door disturbance—"immediately after [she] perceived it." *See* Tex. R. Evid. 803(1). The officer testified that he was dispatched to the "hot shot" disturbance, which meant that it was "going on right now" with both subjects at the scene and involving violence; he arrived within two minutes of the 911 call; when he arrived, he heard a male voice "yelling" inside appellant's apartment and sounding "angry, possible intoxicated"; no one responded to his knocking and that there was "immediate silence"; and around this time, the daughter came out and seemed "worried, scared." According to the officer, it was at this point that he asked her questions.

Because the trial court reasonably could have concluded that the daughter's statements to the officer were admissible under the present-sense-impression exception to the rule against hearsay, we conclude that the trial court did not abuse its discretion when it admitted this evidence. *See Henley*, 493 S.W.3d at 93.

10

**Body-Camera Recording**

Appellant argues that the body-camera recording "was introduced as improper impeachment evidence" because it contained hearsay and the State did not follow the foundation that is required under Rule 613 of the Texas Rules of Evidence concerning a witness's prior inconsistent statements. *See* Tex. R. Evid. 613(a) (discussing foundation required to admit witness's prior inconsistent statements); *see also id.* R. 801(e)(1) (addressing when declarant's prior statement is not hearsay); *Smith v. State*, 520 S.W.2d 383, 386 (Tex. Crim. App. 1975) (explaining that witness's prior inconsistent statement is admissible to impeach witness).

At trial, the body-camera recording was admitted in its entirety through the officer's testimony after appellant's girlfriend already had testified in the State's case-in-chief. Appellant does not dispute that the officer properly authenticated the recording and that it accurately shows the movement and conduct of appellant, his girlfriend, and the officers at the scene and the officers' statements to each other and the girlfriend. *See* Tex. R. Evid. 401 (explaining that evidence is relevant if it has any tendency to make fact more or less probable than it would be without evidence and fact is of consequence in determining action), 801(e)(1)(B) (describing prior consistent statements that are admissible).

At trial, defense counsel objected to the recording's admission when it was offered on the basis that he raises on appeal—that the State should have confronted the girlfriend with her inconsistent statements on the video recording when she testified. Counsel, however, failed to identify the specific statements in the recording that were objectionable or ask for a limiting instruction when the trial court overruled his objection. Thus, even if we assume that portions of the recording were inadmissible, appellant's objection at trial was insufficiently specific to preserve error for appellate review. *See Whitaker v. State*, 286 S.W.3d 355, 369 (Tex.

11

Crim. App. 2009) (placing burden on objecting party to specifically point out which portions are inadmissible when exhibit contains both admissible and inadmissible evidence to preserve complaint on appeal); *Willover v. State*, 70 S.W.3d 841, 847 (Tex. Crim. App. 2002) (explaining that trial court may admit evidence that contains admissible and inadmissible content and "losing party . . . will be made to suffer on appeal the consequences of his insufficiently specific offer or objection"); *see also* Tex. R. App. P. 33.1(a) (describing requirements for preservation of error).

Even if appellant had preserved his complaint about the recording's admissibility for our review, we would conclude that appellant has not shown that his substantial rights were affected by any error in its admission. *See* Tex. R. App. P. 44.2(b). The record reflects that appellant's girlfriend was aware of the recording when she testified during the State's case-in-chief, and she was recalled as a witness during the defense's case-in-chief, giving defense counsel the opportunity to allow her to explain any of her statements on the recording, but counsel chose not to do so. Further, evidence supporting the jury's verdict was overwhelming, including the photographs showing visible injury to appellant's girlfriend's face; the testimony that appellant's right-hand little finger was bruised, the swelling and bruising on the girlfriend's face was increasing, and both of their injuries appeared fresh; the girlfriend's testimony that she and appellant were at home alone when she was injured; the expert's testimony about family violence dynamics; appellant's apology to his girlfriend in the recorded jail call; and evidence of prior incidents involving domestic violence by appellant against his girlfriend. After examining the record as a whole, we have fair assurance that any error in admitting the body-camera recording did not influence the jury or had but a slight effect. *See Motilla*, 78 S.W.3d at 355.

Because we have concluded that the trial court did not abuse its discretion in overruling appellant's objections based on hearsay as to the recording of the 911 call and the

12

daughter's statements to the officer at the scene and that appellant has not preserved complaint or shown harm from any error in the admission of the body-camera recording, we overrule appellant's second issue.

**Confrontation Clause**

In his first issue, appellant argues that the recording of the 911 call and the daughter's statements to the officer at the scene were testimonial in nature and admitted in violation of his Sixth Amendment right to confrontation. *See* U.S. Const. amend. VI (including, among rights of accused in criminal prosecutions, right "to be confronted with the witnesses against him").

### Standard of Review and Applicable Law

The Confrontation Clause bars admission of testimonial statements of a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Id.*; *Davis v. Washington*, 547 U.S. 813, 821 (2006); *see Crawford v. Washington*, 541 U.S. 36, 59 (2004) ("Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."). Non-testimonial statements, "[w]hile subject to traditional limits upon hearsay evidence," are not subject to the Confrontation Clause. *Davis*, 547 U.S. at 821; *see Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011) ("[T]o implicate the Confrontation Clause, an out-of-court statement must: (1) have been made by a witness absent from trial and (2) be testimonial in nature.").

Relevant to this appeal, in determining whether statements made to law enforcement are testimonial, "Texas courts have generally looked to the degree of formality of a

declarant's interaction with police, the purpose and structure of police questioning, and the likelihood that the declarant expects that the statements could be used in a criminal prosecution." *Cook v. State*, 199 S.W.3d 495, 497–98 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see Davis*, 547 U.S. at 821–22 (explaining distinction between testimonial and non-testimonial statements in response to police interrogation); *Vinson v. State*, 252 S.W.3d 336, 338–39 (Tex. Crim. App. 2008) (explaining that statements made to law enforcement in circumstances that objectively show existence of ongoing emergency generally are non-testimonial and listing non-exclusive factors for making that determination). "Statements made to police during contact initiated by a witness at the beginning of an investigation are generally not considered testimonial." *Cook*, 199 S.W.3d at 498.

"Although we defer to a trial court's determination of historical facts and credibility, we review a constitutional legal ruling, i.e. whether a statement is testimonial or non-testimonial, de novo." *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006); *see Cook*, 199 S.W.3d at 497 (explaining that appellate court reviews de novo trial court's ruling that admission of evidence did not violate defendant's rights under Confrontation Clause). Constitutional error that is subject to harmless error review requires reversal unless "the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." *See* Tex. R. App. P. 44.2(a).

### 911 Call

In addition to his hearsay objection, defense counsel objected to the admission of the recording of the 911 call on Confrontation Clause grounds. Similar to counsel's argument to the trial court, appellant argues that the admitted statements in the recording of the 911 call were

testimonial because the mother did not witness the incident that she was reporting and was relaying information outside of her personal knowledge. The circumstances, however, objectively show that the primary purpose of the 911 call was to seek police assistance about an ongoing emergency and a possible crime in progress, "rather than to memorialize" it. *See Vinson*, 252 S.W.3d at 339 (listing among factors whether situation was still in progress and whether primary purpose of interrogation was to render aid rather than to memorialize possible crime); *see also Davis*, 547 U.S. at 822 (explaining that statements are testimonial "when the circumstances objectively indicate that there is no such ongoing emergency"); *Cook*, 199 S.W.3d at 498 (observing that 911 call was placed to inform police of potential crime in progress and holding that statements made in call were non-testimonial).

Further, the questions from the operator to mother "sought to determine what [was] presently happening," and mother did not recount the events in "a step-by-step fashion." *See Vinson*, 252 S.W.3d at 339 (listing among factors to consider "whether the questions sought to determine what is presently happening as opposed to what has happened in the past" and "whether the events were deliberately recounted in a step-by-step fashion"). Considering the relevant factors, we conclude that mother's statements in the 911 call were non-testimonial and that their admission did not violate appellant's rights under the Confrontation Clause. *See Vinson*, 252 S.W.3d at 340; *see also Cook*, 199 S.W.3d at 498 (holding that trial court did not err in admitting recording of 911 call); *Guzman v. State*, No. 02-18-00332-CR, 2019 Tex. App. LEXIS 4278, *5, 11 (Tex. App.—Fort Worth May 23, 2019, no pet.) (mem. op., not designated for publication) (describing 911 caller as stating that "she had just heard someone get shot and had seen a guy run out of a neighboring apartment with a gun"

and holding that trial court did not abuse discretion by admitting statements in 911 call over defendant's Confrontation Clause objection).

**Daughter's Statements to Officer**

In contrast to defense counsel's objections to the recording of the 911 call, defense counsel's objection at trial to the officer testifying about the daughter's statements was limited to a hearsay objection. Thus, appellant has not preserved for our review any complaint based on the Confrontation Clause as to the daughter's statements to the officer. *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103; *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) ("An objection on hearsay does not preserve error on Confrontation Clause grounds.").

Because we have concluded that the admission of the mother's statements in the 911 call did not violate appellant's rights under the Confrontation Clause and that he has not preserved any complaint based on the Confrontation Clause as to the daughter's statements to the officer, we overrule appellant's first issue.

**Conclusion**

Having overruled appellant's issues, we affirm the trial court's judgment.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed: March 24, 2021

Do Not Publish

16