**Affirmed and Opinion Filed September 1, 2021**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-20-00202-CR

**CODY HARRIS HERD, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 59th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 070022**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Garcia
Opinion by Justice Partida-Kipness

Appellant Cody Harris Herd appeals his conviction for possession of a controlled substance, penalty group one, with intent to deliver. In a single issue, Herd complains the trial court violated his Sixth Amendment right to confrontation by admitting testimonial, out-of-court statements of confidential informants. Finding any error harmless, we affirm the judgment.

## BACKGROUND

On September 11, 2018, Sergeant Shane Kumler and Sergeant Troy Laroche of the Denison Police Department executed a search warrant at Herd's residence and arrested Herd for possession of methamphetamine with intent to deliver. A grand

jury indicted Herd for possession, with intent to deliver, methamphetamine in an amount of four grams or more but less than two hundred grams. Herd pleaded not guilty and the case proceeded to a jury trial in January 2020. A jury found Herd guilty and assessed punishment of life imprisonment.

## I.  Affidavit for Search Warrant

In his sole issue on appeal, Herd complains of the trial court's denial of his requests for the State to identify confidential informants addressed in Sergeant Kumler's affidavit for search warrant. In that affidavit, Kumler stated that "[o]ver the past several months [he] has received information from Confidential Sources and Confidential Informants" that Herd is "involved in the distribution of methamphetamine in the Denison, Grayson County, Texas area" and that Herd resides at 2425 West Morton Street in Denison. Kumler went on to discuss information received from three confidential informants and three named informants:

- CI-1 told Kumler that three individuals, Johnny Fretwell, Patricia Holt, and Robert Brown, were distributing or selling methamphetamine, and Herd supplied the methamphetamine to them.

- CI-1 also told Kumler that Herd lived on Morton Street and drove a black motorcycle and maroon truck.

- Kumler executed a search warrant at Patricia Holt's apartment and found Holt and approximately seven grams of methamphetamine inside. Holt told Kumler that Herd supplied her with methamphetamine.

- Jessica Michelle Matthews advised Investigator Dustin Stacks that she had been to Herd's residence on Morton Street on several occasions to purchase methamphetamine from Herd.

- Informant Harley Joe Grimes also told Stacks that he had purchased ¼ ounce of methamphetamine from Herd within the prior two months.

- CI-2 contacted Stacks and stated that he/she observed Herd in possession of over a half a pound of methamphetamine within the prior twenty-four hours.

- Kumler met with CI-3 on September 10, 2018 at a predetermined location to set up a controlled buy from Herd.

Kumler then discussed the controlled buy between CI-3 and Herd and explained his belief that methamphetamine has and is currently being sold from or stored at Herd's residence. A judge issued a search warrant as requested by Kumler. Herd was arrested and indicted as a result of Kumler and Laroche's execution of the warrant and search of Herd's home.

## II.    Pretrial Motions

On April 5, 2019, Herd filed a motion to reveal the identity of the confidential informants discussed in Kumler's affidavit. Herd argued that the informants were necessary to a fair determination of his guilt or innocence and, as such, the State was required to identify the informants under Rule 508(c)(2) of the Texas Rules of Evidence. He further argued that the failure of the State to disclose the informants' identities would deprive Herd of potentially exculpatory and mitigating evidence and also of the right to subpoena the informants as witnesses favorable to Herd under

the Sixth Amendment to the Constitution of the United States, the Texas Constitution, and Article 1.05 of the Texas Code of Criminal Procedure.

At the pretrial hearing on the motion, the parties' counsel informed the court that they had reached an agreement on the motion. The State told the trial court that the State "will burn the CI in that case." On August 28, 2019, the trial court signed an order granting Herd's motion and ordering the state to comply at least twenty days before trial. The State identified CI-3 before trial but refused to identify the remaining two informants. The State filed a "Memorandum" on December 20, 2019 setting out the State's arguments for why the State was not required to turn over the informants' identities. On December 26, 2019, Herd filed his response to the State's Memorandum and re-urged his motion to compel identification of all three confidential informants listed in Kumler's affidavit.

The case was called to trial on January 13, 2020. Before voir dire and without hearing arguments of counsel, the trial court denied Herd's motion to compel disclosure of the two remaining confidential informants. The trial court did, however, inform Herd that he would be permitted to voir dire Kumler outside the presence of the jury during trial if needed about the use of the informants. Herd's counsel did just that before opening statements. During the examination, Kumler confirmed the statements made in his affidavit. He also confirmed that CI-1 and CI-2 were not in the house with Herd shortly before he served the warrant and were not present at the scene when Herd was arrested. Kumler also told the court that,

–4–

although CI-1 and CI-2 gave him Herd's address and a description of his vehicle, the locations of where CI-1 and CI-2 interacted with Herd had nothing to do with the information Kumler put in the warrant. The trial court overruled Herd's request for relief.

## III. Trial

The guilt-innocence phase of trial was relatively short. The State called only two witnesses in its case-in-chief; Sergeant Kumler and forensic scientist Hannah Sigal. Kumler began his testimony by explaining how methamphetamine is distributed and sold in Grayson County. He explained that some methamphetamine is brought in from Mexico. In that circumstance, the buyer wires money to the dealer in Mexico who in turn hires a runner in the DFW metroplex to deliver what is often "pounds of methamphetamine at a time." But there are also local distributers and buyers in the metroplex. According to Kumler, "numerous people" drive to the metroplex to buy methamphetamine, pick up between an ounce to a couple of pounds of methamphetamine, bring it back to Grayson County, and then sell it. Kumler told the jury that a dealer selling to dealers may buy a pound and then sell it by the ounce, but other people buy an ounce and come back to Grayson County and sell it by the gram. Kumler testified that methamphetamine has flooded the market because it is inexpensive to make and to buy. He explained that ten to twelve years ago, the police department would buy an ounce of methamphetamine for $1,200. Now, the price is only $250 an ounce.

Kumler then explained to the jury that there are many different ways for law enforcement to get the names of people selling drugs in Grayson County. Those include tips from citizens who want to help officers as well as information from confidential informants who may have been arrested and would rather give officers information than go to jail. Kumler testified over Herd's hearsay objection that he became interested in Herd in 2018 after informants provided information that Herd "was the source. He was the dealer's dealer, is how originally it began." According to Kumler, that information came from several places. Kumler then explained how they were able to obtain the search warrant for this case:

Q. Okay. And in relation specifically to how we ultimately got this search warrant for this case, tell the jury how we got to that point, sir.

A. It was receiving information from different people, different informants, surveillance by several members of the task force, and we performed what we call a controlled buy. And what we do there is, I use an informant who is able to buy methamphetamine from someone. Meet with them, furnish them with the money to buy, furnish them with the recording equipment, and we will send them to a location -- usually that's already predetermined -- and they will purchase the narcotic -- or, methamphetamine in this case -- for me under my direction.

After they make the purchase, they meet with me again. I take possession of the recording device, the methamphetamine. The informants are searched or frisked prior to and after to make sure they didn't bring the narcotic with them and they're not leaving with anything. And that's ultimately how this ended up with a search warrant.

Q: You also – did you also bust several other people who proffered information that Cody Herd had – they had been inside Cody Herd's house and he was selling them drugs?

A: That's correct.

Q. Okay. Ultimately, did you decide to utilize one of your confidential informants to make a buy from Mr. Herd?

A. I did.

Q. Okay. Tell the judge not that person's name but just kind of specifically what you did with him.

A. Just that. That day, we -- he had agreed to purchase methamphetamine from Mr. Herd. Because we were trying to obtain a search warrant for the residence, which is where we thought he was storing most of his methamphetamine, we tried to buy from him at the residence. So, we sent the informant -- after meeting with them and furnishing them with the money and the recording device, he went to Mr. Herd's house. Mr. Herd wasn't there.

He came back and met with me again. I'm trying to -- I don't know if it was through text message or actually a phone call. He talked to Mr. Herd. Herd agreed to bring him the methamphetamine to his residence. So, the informant went to his residence. Myself and Sergeant Laroche began watching Mr. Herd's house. Laroche stayed on his house. I stayed in between the house and where the informant was living. Shortly after Mr. Herd said he would deliver the methamphetamine, he arrived at his residence on Morton Street. Within five to 10 minutes he left his house, drove directly to the informant's house, and the purchase was made.

Kumler had given the informant $160 to buy $100 in methamphetamine and to pay Herd the $60 the informant owed Herd from a prior transaction. Kumler gave the informant the cash in $20 bills and made photocopies of the bills so that he had a record of the serial numbers on the bills. After the buy, the informant brought Kumler the methamphetamine he purchased from Herd. It was Kumler's opinion that the amount of methamphetamine purchased was an appropriate amount for a $100 purchase. Kumler then continued his explanation of how he obtained the search warrant to search Herd's house following the controlled buy:

–7–

Q. Okay. So, we've now – you've gotten the independent sources. We've done the controlled buy where the defendant sold to a CI. What next?

A. Then I obtained a search warrant for Mr. Herd's residence.

Q. Tell the jury how one goes about getting a search warrant in a situation like this.

A. Well, the search warrants, you're going to have to develop probable cause that the district judge or whatever judge you take it to believes that the person is utilizing the residence to either store or distribute whatever item you're alleging, which in this was methamphetamine. The fact that we had information from people who had seen Mr. Herd in possession, the fact that we ordered methamphetamine from Mr. Herd, he left from his residence, drove directly to my informant, in my opinion, is probable cause for a search warrant on the residence.

Q. And did, in fact, a district judge sign a search warrant?

A. That's correct.

A few hours after obtaining the warrant, he and Laroche served the warrant on Herd and arrested him outside of his home on Morton Street. Kumler testified that they searched Herd and found $441 in his wallet. Four of the eight $20 bills they had used the day before to buy the methamphetamine were included in the money in Herd's wallet.

Kumler, Laroche, and additional officers then searched the house. In the living room, they found a bag containing approximately eight grams of methamphetamine, and a Springfield XD 9 semi-automatic handgun with a clip loaded with 16 bullets. In the dining room, they found a plastic box with four smaller plastic bags inside. Two of those bags contained methamphetamine – 14 grams in one and 28 grams in another. The third bag contained a small amount of marijuana, and the fourth bag

–8–

contained several different types of pills. Kumler told the jury that, in his experience, methamphetamine users typically have a single bag with under a gram of methamphetamine in it, but methamphetamine dealers have more like what they found in Herd's house. He also testified that in drug houses where someone is selling methamphetamine, he usually finds a large amount of methamphetamine, digital scales to weigh the methamphetamine, plastic baggies to package the methamphetamine, weapons, firearms, surveillance systems, and more drugs. According to Kumler, they found all of those items in Herd's house. Kumler then told the jury that this was a substantial amount of methamphetamine for the area and it was individually packaged for distribution. It was his opinion that Herd intentionally or knowingly possessed methamphetamine between 4 and 200 grams with the intent to deliver and by arresting Herd, the Denison Police Department took a drug dealer off the streets.

After the State passed the witness, Herd's counsel asked to take up an objection outside the presence of the jury, and the court proceeded without the jury present. Herd's counsel made the following arguments concerning Kumler's testimony:

> HERD'S COUNSEL: The -- previously the Court had ruled that the -- this witness would not have to reveal informants that were used in his warrant. At that time, there was no -- there was no statements of any witnesses that had been presented to the jury. In his testimony today in front of the jury, he did make statements that were told -- that were provided to him by multiple people, and those statements specifically were that this defendant was involved in drug distribution.

Now, that was admitted over objection. The purpose being described by the prosecuting attorney that the information was used to procure the warrant. We believe that the defendant has a right to have witnesses in his defense. Those witnesses' statements have been put in front of the jury as being used to obtain the warrant, and we will intend to question the witness about the identity of the persons that gave all of those statements.

THE STATE: I'm reading the rules of evidence, Judge. I still don't see an exception for that. It's -- the facts are the exact same as the facts the Court's already considered. There's nothing new here. Everything I asked this witness were the exact same questions -- strike that -- were the same -- involved the same material that was used in the search warrant. I didn't ask anything outside of that. And so, I would just direct the Court to our briefs, and on Rule 508, there's – there's nothing to be shown. These informants can -- their testimony is necessary to a fair determination of guilt or innocence. It's simply probable cause for a search warrant as is in every case involving search warrants and confidential informants in this country.

HERD'S COUNSEL: Further argument, Your Honor?

THE COURT: Yes.

HERD'S COUNSEL: Your Honor, the -- the State could have simply talked about a warrant being obtained and being -- probable cause being assessed by the reviewing magistrate, but, instead, they chose to label the activity of the defendant as him providing drugs and that it came from several people. The defendant, if he does not know who they are, will not have a chance to confront -- confront accusers

The trial court overruled the objection and instructed counsel not to question the witness as to the informants' identities. On appeal, Herd complains that his Sixth Amendment right to confront witnesses was violated by the trial court's order denying Herd's request for the identities of the confidential informants.

## STANDARD OF REVIEW

The admission or exclusion of evidence is reviewed for abuse of discretion. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018); *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). "Under this standard, the trial court's decision to admit or exclude evidence will be upheld as long as it was within the 'zone of reasonable disagreement.'" *Beham*, 559 S.W.3d at 478.

## APPLICABLE LAW

In a single issue, Herd asserts that he was denied his Sixth Amendment right to confront witnesses because the trial court admitted out-of-court statements by confidential informants through a testifying officer and ordered Herd's counsel not to ask the identity of those informants. The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; . . . ." U.S. CONST. amend. VI. To protect this right, "testimonial" evidence is inadmissible at trial unless the witness who made the statement either takes the stand to be cross-examined or is unavailable and the defendant had a prior opportunity to cross-examine him. *Crawford v. Washington*, 541 U.S. 36, 53–54, 59 (2004); *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). Once a defendant raises a Confrontation Clause objection, the State bears the burden to establish either that the evidence does not contain testimonial hearsay statements or,

if it does contain testimonial hearsay statements, that those statements are nevertheless admissible under *Crawford*. *De La Paz*, 273 S.W.3d at 681; *Abarca v. State*, No. 08-19-00038-CR, 2021 WL 268154, at \*17 (Tex. App.—El Paso Jan. 27, 2021, pet. refused) (not designated for publication).

The Sixth Amendment does not bar the use of nontestimonial hearsay. *Sanchez v. State*, 354 S.W.3d 476, 485 (Tex. Crim. App. 2011); *Infante v. State,* 404 S.W.3d 656, 664 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The threshold inquiry for a Confrontation Clause violation is, therefore, whether the admitted statements are testimonial in nature. *Vinson v. State*, 252 S.W.3d 336, 338 (Tex. Crim. App. 2008); *see also Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011) (concluding, in reviewing Confrontation Clause challenge, appellate courts must "first determine whether the Confrontation Clause is implicated[,]" that is, whether an out-of-court statement was made by a witness absent from trial and testimonial in nature).

Whether a statement is testimonial is a constitutional legal question that we review de novo. *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010); *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006). Testimonial statements are typically solemn declarations made for the purpose of establishing some fact. *Crawford*, 541 U.S. at 51; *Russeau v. State*, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005). This typically occurs "when the surrounding circumstances objectively indicate that the primary purpose of the [communication] is to establish or prove past

–12–

events potentially relevant to later criminal prosecution." *De La Paz*, 273 S.W.3d at 680; *see also Davis v. Washington*, 547 U.S. 813, 822 (2006) (statements are testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution").

"While the exact contours of what is testimonial continue to be defined by the courts, such statements are formal and similar to trial testimony." *Burch*, 401 S.W.3d at 636. Testimonial statements include: (1) "ex parte in-court testimony or its functional equivalent," i.e., "pretrial statements that declarants would reasonably expect to be used prosecutorially"; (2) "extrajudicial statements contained in formalized testimonial materials," such as affidavits, depositions, or prior testimony; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Langham*, 305 S.W.3d at 576 (citing *Wall*, 184 S.W.3d at 735–36). When considering whether a statement is testimonial or non-testimonial, we give almost total deference to the trial court's determination of historical facts and review de novo the trial court's application of the law to those facts. *Wall*, 184 S.W.3d at 742 (applying hybrid standard of review to issue of whether statement was testimonial); *Mason v. State*, 225 S.W.3d 902, 906–07 (Tex. App.—Dallas 2007, pet. ref'd) (same).

Error in admitting evidence in violation of a defendant's right to confront the witnesses against him is constitutional error, which requires reversal unless the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a); *Langham*, 305 S.W.3d at 582. When determining whether a confrontation clause error is harmless, we consider: (1) how important the out-of-court statement was to the State's case; (2) whether the out-of-court statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and (4) the overall strength of the prosecution's case. *Langham*, 305 S.W.3d at 582. We must be satisfied, to a level of confidence beyond a reasonable doubt, that the error did not contribute to the conviction. *Id.*

## WAIVER

As a preliminary manner, we address the State's contention that Herd waived his Confrontation Clause complaint by not asserting it in the trial court. We disagree. Herd asserted the Confrontation Clause in his pretrial motion to compel the State to reveal the identities of the confidential informants and cited his right to confrontation as part of his objection and renewed motion during trial following the direct examination of Kumler. He, therefore, preserved error on this issue by drawing the trial court's attention to his Confrontation Clause complaint during Kumler's trial testimony. TEX. R. APP. P. 33.1; *see Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009) (circumstances surrounding the defendant's objection and the trial

–14–

court's ruling made it clear that the trial court was aware of the basis of the defendant's objection); *but cf. Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (appellant failed to preserve error on Confrontation Clause grounds at trial by asserting only a hearsay objection to the testimony at trial).

## ANALYSIS

Moving to the merits of Herd's appeal, we must first determine whether the statements of the confidential informants revealed by Kumler at trial were testimonial in nature. *Vinson*, 252 S.W.3d at 338 (threshold inquiry for a Confrontation Clause violation is whether the admitted statements are testimonial in nature). Kumler testified that he became interested in Herd after receiving information from informants that Herd "was the source. He was the dealer's dealer, . . ." Kumler also obtained information from other people that they had been inside Herd's house and bought methamphetamine from him. Kumler testified that the information from the informants, the controlled buy with CI-3, and the results of officer surveillance allowed him to establish probable cause and to obtain the search warrant for Herd's home. Herd maintains the statements were testimonial because they were made during police questioning, addressed an element of the charged offense, and were made under circumstances that would lead an objective witness to reasonably believe the statements would be available for use at a later trial. The State maintained below that the statements were non-testimonial because they were

–15–

offered solely to explain probable cause for the warrant. We agree with Herd, and find *Langham v. State*, 305 S.W.3d 568 (Tex. Crim. App. 2010) instructive.

In *Langham*, the Court of Criminal Appeals determined that testimony similar to the testimony at issue here was "testimonial and put to evidentiary use for the truth of the matter asserted, . . . .". *Id.* at 581–82. There, as here, officers utilized information from confidential informants to obtain a search warrant to search the residence of a suspected drug dealer. *Id.* at 572. Specifically, one of the State's two witnesses, Detective Rodney Smith, explained that many of his investigations begin with tips from confidential informants, including the investigation at issue in that case. Smith testified that he received information from a confidential informant that a "particular residence was being used as a place where drugs were trafficked, were being sold, . . . ." *Id.* at 571–72. The informant also provided Smith with the name of one individual who was at the residence and other informants provided Smith with the names and descriptions of other people, including appellant, "operating a crack cocaine business" out of the house. *Id.* at 572. On the basis of that information, Smith obtained a search warrant for the residence. *Id.*

The *Langham* court determined that the statements were testimonial in nature because "the primary purpose" of Smith's communication with the informant was to "pave the way for a potential criminal prosecution." *Langham*, 305 S.W.3d at 579. As the court explained:

> Information that cocaine was being peddled from the residence at 5301 Encino, as the confidential informant asserted, was unquestionably relevant to the subsequent prosecution of anyone who was involved in that activity. That before he could initiate such a prosecution Detective Smith had to first use that information to obtain a search warrant does not detract from the fact that his "primary,"—that is to say, his "first in rank or importance"—purpose was to apprehend and eventually prosecute those in the residence who were involved (and the confidential informant specifically asserted that the appellant "was also involved") in the illegal enterprise. A search warrant is never an end in itself. While securing a search warrant may have been Detective Smith's "first-in-time" objective in talking to his confidential informant about the activities at 5301 Encino, potentially securing a conviction and punishment for those involved was his "first-in-importance" objective. We conclude that the out-of-court statements were testimonial for Confrontation Clause purposes.

*Id.* at 579–80. The court went on to reject the State's argument that the statements were testimonial but otherwise admissible because they simply provided "background" to explain why Smith investigated that particular residence and were not offered to establish that cocaine was being sold from the residence and appellant was involved. *Id.* at 580.

The *Langham* court concluded that Smith's representation of the informant's statements "provided far greater detail than was reasonably necessary to explain why the police decided to investigate the residence" and could not be admitted over a Confrontation Clause objection under the guise of merely supplying "background" information to the jury. *Id.* at 580. The court reasoned that "[t]he jury did not need to know the kind of details that would have gone into his probable cause affidavit in order to have context enough to understand and evaluate the balance of the State's evidence implicating the appellant in possession of the cocaine found in the house."

–17–

*Id.* In addition, the court noted that the prosecutor "made substantive use" of the statements in her closing argument, "arguing far beyond their relevance as mere background evidence to rebut the defense claim that the diminutive portions of cocaine found in the residence justified a reasonable doubt that the appellant intentionally or knowingly possessed it." *Id.* at 581. The court concluded that admission of the statement violated Langham's Sixth Amendment right to confrontation because the statement was testimonial, put to evidentiary use for the truth of the matter asserted, and the State did not show the informant was unavailable to testify at trial and that the appellant had a prior opportunity to cross-examine him. *Id.* at 581–82.

We draw the same conclusions in this case. Here, Kumler testified that law enforcement used the statements from the confidential informants to set up the controlled buy and to obtain the search warrant that led to Herd's arrest. Kumler's representations of the confidential informants' statement, like Smith's description in *Langham*, was more detailed than reasonably necessary to explain why the police decided to investigate Herd. Indeed, statements from named informants along with the information regarding the controlled buy would have sufficed to serve that purpose. Further, like the prosecutor in *Langham*, the prosecutor in this case substantively used the statements of the confidential informant in his closing argument to bolster the State's claim that Herd was a drug dealer who was caught possessing a large amount of methamphetamine with an intent to deliver those drugs.

Specifically, the prosecutor listed the statements as one of the facts to support a finding of intent to deliver:

> Last, with intent to deliver. . . . This right here is what a drug dealer keeps with the scales. There's the marijuana, there are the pills, there's the pipe. Here is a large amount of meth in a house. We know that numerous drug dealers in the community were telling police that this was their source. We know that they did the confidential buy.

Under this record, we conclude the statements were testimonial and not admissible as mere background information. Because the State has not shown the confidential informants were unavailable to testify at trial and Herd had a prior opportunity to cross-examine them, admission of the statements over Herd's objections violated his Sixth Amendment to confrontation.

Because the error in question is constitutional in nature, we may affirm the judgment of conviction if we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a); *Langham*, 305 S.W.3d at 582. In performing this analysis, we consider the entire record as well as (1) the nature of the error; (2) the extent it was emphasized by the State; (3) the probable implications of the error; and (4) the weight a juror or fact-finder would probably place on the error. *Snowden v. State*, 353 S.W.3d 815, 821–22 (Tex. Crim. App. 2011). These factors are not exclusive and other considerations may logically inform our constitutional harm analysis. *Id.*

Constitutional error does not contribute to the conviction or punishment if the conviction and punishment would have been the same even if the erroneous evidence

–19–

had not been admitted. *Velasquez v. State*, No. 05-19-00003-CR, 2020 WL 1042522, at *2 (Tex. App.—Dallas Mar. 3, 2020, pet. ref'd) (mem. op., not designated for publication) (first citing *Clay v. State*, 240 S.W.3d 895, 904–05 (Tex. Crim. App. 2007), and next citing *Speers v. State*, No. 05–14–00179–CR, 2016 WL 929223, at *9 (Tex. App.—Dallas Mar. 10, 2016, no pet.) (mem. op., not designated for publication)). Our review, however, is not merely a sufficiency-of-the-evidence review. "Instead, the question is . . . whether, in other words, the error adversely affected the integrity of the process leading to the conviction." *Langham*, 305 S.W.3d at 582. We must ask ourselves "whether there is a reasonable possibility that the *Crawford* error moved the jury from a state of non-persuasion to one of persuasion on a particular issue." *Id.* We may affirm the conviction if, after considering these factors, we can declare ourselves satisfied "to a level of confidence beyond a reasonable doubt, that the error did not contribute to the conviction. . . . " *Id.*

Applying these standards, we are satisfied beyond a reasonable doubt that the error did not contribute to Herd's conviction. Here, the State's evidence included more than Kumler's general statements that informants told him that Herd was a methamphetamine dealer. The jury saw video of the controlled buy, Herd's arrest, and the search of his home. Kumler further testified in detail regarding the controlled buy, serving the warrant on Herd, his arrest, and the search of his house. Kumler also explained that the actions of Herd during the controlled buy and the amount of

methamphetamine found during the search indicated that Herd was a dealer of methamphetamine rather than merely a user. Kumler's testimony that informants told him Herd was their supplier and dealer and had drugs in his home was only a fraction of his testimony. The physical evidence, including the videos of the controlled buy and the search, and Sigal's testimony concerning the amount of methamphetamine seized during the search buttressed Kumler's testimony concerning Herd's intent to deliver those drugs.

Under this record, we cannot conclude that there is a reasonable possibility that the *Crawford* error moved the jury from a state of non-persuasion to one of persuasion on a particular issue. The record convinces us beyond a reasonable doubt that Herd would have been convicted even if the erroneous evidence had not been admitted. As such, after carefully reviewing the record and performing the required harm analysis, we conclude beyond a reasonable doubt that any error by the trial court in admitting the challenged statement did not contribute to appellant's conviction or punishment. TEX. R. APP. P. 44.2(a). Accordingly, we overrule Herd's sole issue.

# CONCLUSION

We conclude the admission of the confidential informant's testimonial statements constituted harmless error and affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish.
TEX. R. APP. P. 47.2(b).

200202F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

CODY HARRIS HERD, Appellant

No. 05-20-00202-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 59th Judicial District Court, Grayson County, Texas
Trial Court Cause No. 070022.
Opinion delivered by Justice Partida-Kipness. Justices Myers and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 1st day of September 2021.